STATE AUTOMOBILE MUTUAL INSURANCE COMPANY v. SMITH DRY CLEANERS, INC.

No. 11

(Filed 1 July 1974)

**Bailment § 3— shrinkage from dry cleaning — responsibility of defendant — sufficiency of evidence**

In an insurer's action to recover for damages to insured's draperies and bedspread by shrinkage which allegedly occurred when they were dry cleaned by defendant, the trial court erred in directing a a verdict for defendant where plaintiff's evidence tended to show that soot damage occurred in two rooms of insured's home, that a company which undertook to clean the damaged rooms took the draperies and bedspread from the home to have them cleaned and the items were then in good condition except for being sooty, that the items were delivered to defendant by said company and were thereafter in the sole, exclusive possession of defendant during the cleaning process, that the insured wrote a check to defendant for the work done, and that when returned the items were clean but had been damaged by shrinkage which occurred after they had been removed from the insured's home, notwithstanding plaintiff's evidence failed to show the condition of the items when they were delivered to defendant, that they were not damaged while in the possession of the company which removed them, or that they had not been unsatisfactorily cleaned by another before being delivered to defendant since, nothing else appearing, the more reasonable probability is that the items were taken directly from the insured's home to defendant's dry cleaning establishment and were delivered to defendant in an unshrunken condition.

ON *certiorari* to review the decision of the Court of Appeals affirming judgment of *Henderson, J.,* 12 February 1973 Session of the District Court of FORSYTH.

Plaintiff Insurance Company, as subrogee, brought this action against defendant Dry Cleaners to recover for the damage which it allegedly did to the personal property of its insureds, Mr. and Mrs. O. E. Wagoner.

Plaintiff's evidence, which consisted of the testimony of Mr. and Mrs. Wagoner and defendant's answers to two interrogatories, tended to show:

In December 1971 the furnace in the Wagoner home blew soot in to the living room and a bedroom. The walls and draperies in both rooms, and the bedspread and pillows in the bedroom, were blackened by the blast. They were "sooty and nasty." The Wagoners notified plaintiff, their "homeowner's insurance car-

rier." Arrangements were made with Serve-Pro, Inc., to clean up and undo the damage and "for those living room drapes to be taken to Smith Dry Cleaners. Serve-Pro handled it."

Servo-Pro washed and painted the walls, and took down the draperies. The living room draperies, made of antique satin, were draw drapes for a large picture window. They hung from rods almost to the carpet. At that time the draperies were less than two years old. They had been dry cleaned once before and, except for the soot damage, were in good condition. Serve-Pro took the draperies, the bedspread and the pillows from the house to have them cleaned and, approximately a week later, returned with them. The pillows "did not come clean." The bedspread and the drapes were clean but both had been shrunk. The bedspread, which had previously hung to the floor on both sides of the bed, was from six to eight inches short on one side; the living room draperies hung from four to six inches above the floor and lacked four or five inches of covering the cornice board. Mrs. Wagoner testified that the items were worth $700.00 immediately before they went to the cleaners and only $25.00 after they were returned.

On account of the shrinkage to the bedspread and the living room draperies plaintiff paid its insureds $661.38, the sum which it seeks to recover in this action. The Wagoners did not see the draperies from the time Serve-Pro removed them from their home until it returned them. Mrs. Wagoner testified that she "wrote a check to Smith Dry Cleaners for the work they did." The record is silent as to when and under what circumstances this check was delivered.

Plaintiff served eleven interrogatories upon defendant, which answered them all. Plaintiff introduced into evidence only interrogatories numbered 2 and 4, and only these were for the judge's consideration in passing upon the motion for a directed verdict.

### "NUMBER 2.

"Question: On what date do your records show that you received from plaintiff's insureds:

"(a) The living room draperies?

"(b) The bedspread and pillow set?

"Answer:

"(a) Sometime in December, 1971.

"(b) Sometime in December, 1971.

"NUMBER 4.

"Question: Once they were delivered to you, were such items in your sole, exclusive possession during the cleaning process? What other persons (names and addresses) had possession of them?

"Answer: Yes and none respectively."

At the conclusion of plaintiff's evidence defendant's motion for a directed verdict was allowed and plaintiff appealed. The Court of Appeals affirmed the judgment dismissing the action, *Insurance Co. v. Dry Cleaners*, 19 N.C. App. 444, 199 S.E. 2d 157 (1973), and we allowed certiorari.

*Womble, Carlyle, Sandridge & Rice by Allan R. Gitter and and William F. Womble, Jr., for plaintiff appellant.*

*Graves & Nifong by R. Brandt Deal and Norman L. Nifong, for defendant appellee.*

SHARP, Justice.

Plaintiff prosecutes this action under the rule that an insurance company paying a loss to its insured under the obligation of its policy for property damaged by the tortious act of another is entitled to subrogation to the rights of its insured against the one whose tortious act caused the damage to the extent of the loss paid by the insurance company. *Insurance Co. v. Storage Co.*, 267 N.C. 679, 149 S.E. 2d 27 (1966).

To recover, plaintiff invokes the following well established principle of law: "A *prima facie* case of actionable negligence, requiring submission of the issue to the jury, is made when the bailor offers evidence tending to show that the property was delivered to the bailee; that the bailee accepted it and thereafter had possession and control of it; and that the bailee failed to return the property or returned it in a damaged condition." *Insurance Co. v. Motors, Inc.*, 240 N.C. 183, 185, 81 S.E. 2d 416, 418 (1954). *See* cases cited therein and *Mills, Inc. v. Terminal, Inc.*, 273 N.C. 519, 160 S.E. 2d 735 (1968). "Returned in a dam-

aged condition," as that phrase is used in the preceding quotation, means, of course, that the property was returned with damage which occurred while the property was in the bailee's possession.

Plaintiff's evidence tends to show: Arrangements were made for the draperies, a bedspread and two pillows belonging to its insureds to be taken to defendant. They were delivered to defendant "sometime in December 1971." After delivery to defendant these items were in its sole, exclusive possession during the cleaning process. Serve-Pro took the items from the Wagoner home in order to have them cleaned and, at that time, all were in good conditon except for the soot soil. At some unrevealed time Mrs. Wagoner wrote a check to defendant for the work done. When Serve-Pro returned the drapes and bedspread both were clean but they had been damaged by shrinkage which occurred after they were removed from the Wagoner premises.

Defendant's motion for a directed verdict was based upon the ground that plaintiff had failed to show the condition of the property at the time of its delivery to defendant. Defendant argued: The Wagoners did not deliver the drapes and spread to defendant; they delivered them to employees of Serve-Pro who took them away and returned with them approximately a week later. The Wagoners did not see the items in the interim. Since no representative of Serve-Pro testified, it says, "It would be mere conjecture to try to establish their condition at the time and what other acts or clean processes, if any, were performed on the goods prior to being delivered to the defendant without the testimony of the person who delivered the property. The chain of custody has been broken by the plaintiff."

The Court of Appeals found defendant's rationale convincing. Admittedly this is a close case. Deficiencies in plaintiff's evidence leave unanswered questions which defendant has been alert to raise. It is, of course, possible that Serve-Pro allowed the drapes and spread to get wet in transit from the Wagoner home to defendant's establishment. It is also possible that Serve-Pro first took the items to another cleaner which did not do a satisfactory job of cleaning and that the shrinkage occurred there. Defendant points out that the record contains no admission that the items were sooty when delivered to it; that the drapes and spread were neither measured before they left the Wagoner home nor at the time they were delivered to defendant, "sometime in December 1971."

Insurance Co. v. Cleaners

The shrunken items were gone from the Wagoner residence "approximately a week"—not an unreasonable time for cleaning accessories of such size, bulk, and nature. Since defendant was paid for cleaning the items it is a fair inference that it did clean them and that they needed cleaning.

Conceding that the possibilities which defendant suggests do exist, we think plaintiff's evidence raises no question to which defendant cannot supply the answer. Presumably an expert dry cleaner could tell whether drapes and a spread which had taken a blast of soot from a furnace came to it for cleaning *after* they had been exposed to rain or *after* another cleaner had attempted unsuccessfully to restore them. In our view, nothing else appearing, the more reasonable probability is that Serve-Pro took the items directly from the Wagoner residence to defendant's dry cleaning establishment and delivered them in an unshrunken condition. *See Wilkerson v. Clark,* 264 N.C. 439, 141 S.E. 2d 884 (1965) and cases cited therein; 3 Strong's N. C. Index, *Evidence* § 21 (1967). On a motion for a directed verdict the evidence must be interpreted most favorably to plaintiff, and if it is of such character that reasonable men may form divergent opinions of its import, the issue is for the jury. *Stewart v. Check Corp.,* 279 N.C. 278, 182 S.E. 2d 410 (1971) ; *Corum v. Tobacco Co.,* 205 N.C. 213, 171 S.E. 78 (1933).

We hold that the motion for a directed verdict was improperly granted. The decision of the Court of Appeals is reversed with directions that the case be remanded to the District Court for a trial *de novo.*

Reversed.