NOLAND COMPANY, INC. v. TED A. POOVEY, T/A TED A. POOVEY PLUMB-
ING COMPANY, AND THE OHIO CASUALTY INSURANCE COMPANY

No. 8025SC1110

(Filed 6 October 1981)

1. **Uniform Commercial Code § 18— recovery of payment for goods—delivery and acceptance**

In order for plaintiff to show that defendant was indebted to it for pay-
ment for certain goods, plaintiff did not have to show that defendant received
these goods but had to show that it delivered these goods and defendant ac-
cepted delivery. G.S. 25-2-503; G.S. 25-2-606.

2. **Uniform Commercial Code § 20— delivery of goods—acceptance or rejection by buyer—jury question**

In an action to recover payment for plumbing materials allegedly sold by
plaintiff to defendant for use in a construction project, a jury question was
presented as to whether plaintiff was entitled to recover for all materials
shown on its exhibits, and the trial court properly refused to direct a verdict
for defendant as to all invoices not actually signed by defendant, where plain-
tiff's evidence tended to show that it tendered delivery of all the materials
listed on its exhibits and that defendant accepted delivery of such materials,
and where defendant's evidence tended to show that the goods were all
delivered to him but that he notified plaintiff of his rejection of those in excess
of his needs.

3. **Accounts § 2— account stated—sufficiency of evidence**

The trial court properly instructed on an account stated where plaintiff
presented evidence tending to show that it sold and delivered numerous goods
to defendant, that defendant was periodically invoiced for these goods between
August 1976 and February 1977, and that defendant did not make his objec-
tions to the sale and delivery of these goods known to plaintiff until March
1979, since the jury could find that defendant impliedly agreed to the account
stated by failing to object to the bills and invoices he received from plaintiff
within a reasonable time.

4. **Accounts § 1— open account—sufficiency of evidence**

The trial court properly instructed the jury with regard to defendant's
possible indebtedness to plaintiff on an open account where plaintiff's evidence
tended to show that plaintiff established a $40,000 line of credit for defendant
to purchase plumbing supplies for a construction project; defendant was billed
periodically on this credit account; a running balance was maintained on the
account; and continuous dealings based on this account were contemplated and
did occur.

**5. Accounts § 2— account stated—express or implied admission—instructions**

The trial court did not err in instructing the jury that it should determine whether defendant was indebted to plaintiff on an account stated and that an account stated results if the debtor admits the correctness of the account but that such "would not apply in this case" where it is clear from the court's further instructions on an account stated arising from an implied admission that the court was referring to the fact that there was no evidence of an account stated by express admission.

**6. Trial § 34— statement of contentions—failure to refer to exhibits**

The trial court's failure to refer to defendant's exhibits when instructing the jury on his contentions was not error.

**7. Sales § 10.1; Uniform Commercial Code § 20— acceptance of goods—authority to take delivery—instruction not necessary**

In an action to recover for goods allegedly sold and delivered to defendant, the trial court did not err in failing to give an instruction as to who was authorized to take delivery of goods for defendant since the identity of the person accepting the goods is immaterial to the question of whether there was a delivery. G.S. 25-2-503.

**8. Sales § 10.1— action for goods sold and delivered—instructions on contract not required**

In an action to recover for plumbing materials allegedly sold and delivered to defendant for use in a construction project, defendant's evidence did not require the court to give instructions to the jury relating to whether the parties contracted that plaintiff would supply all materials needed to complete the plumbing work on the project for a specified sum where it showed only that defendant and plaintiff's agent compiled a list of materials which might have been used on the project and the prices thereof.

**9. Principal and Surety § 9.1— goods sold and delivered—contractor's payment bond—separate issues as to liability of contractor and surety**

The surety on a plumbing contractor's payment bond for materials used in the construction of a county building was liable only for materials actually used by the contractor in constructing such building, and the trial court erred in refusing to submit separate issues as to the amount of the contractor's liability to plaintiff for materials delivered to him at the construction site of the county building and the amount of the surety's liability on the payment bond where there was evidence tending to show that some of the materials delivered to defendant at such construction site were not used by defendant in constructing the county building but were used in other construction projects. G.S. 44A-25(5).

**10. Interest § 2; Judgments § 55— account stated—interest on judgment**

The trial court did not err in permitting interest on plaintiff's judgment against defendant on an account stated from the date of judgment, rather than from the date of demand and refusal of payment, where defendant presented evidence that some of the materials listed on plaintiff's invoices had not in fact

been delivered to him, and the amount due on defendant's stated account was thus not ascertainable until the jury returned its verdict.

APPEAL by defendants and by plaintiff from *Friday (John R.)*, *Judge*. Judgment entered 23 July 1980 in Superior Court, BURKE County. Heard in the Court of Appeals 6 May 1981.

In this action plaintiff seeks to recover payment for plumbing materials it delivered to defendant Poovey for use in the construction of the Burke County Human Resources Center in Morganton, North Carolina (hereinafter Center). Plaintiff alleged that defendant Poovey contracted on 28 June 1976 with Burke County to perform the plumbing work in the construction of the Center. Pursuant to G.S. 44A-25 *et seq*. defendant Ohio Casualty Insurance Company (hereinafter Insurance Company) executed as surety a "Labor and Material Payment Bond" guaranteeing payment for all labor and materials "used or reasonably required for use" by the principal on the bond, defendant Poovey, in his performance of his contract to complete the plumbing work at the Center. Defendant Insurance Company guaranteed such payment to the extent of $81,513. Subsequently, plaintiff sold and delivered supplies and materials to defendant Poovey which were necessary for completion of the plumbing on this project. Plaintiff alleged that the total price of the materials so delivered was $29,692.42. These materials were listed in plaintiff's invoices which were allegedly sent to defendant Poovey at the time of the delivery of the materials at the job site. Plaintiff requested that the trial court award it $29,692.42 representing the balance due since 6 June 1977 for these supplies and materials.

Plaintiff also alleged that defendant Insurance Company was also indebted to plaintiff for the sum of $29,692.42 with interest as surety on its payment bond with defendant Poovey and requested that the trial court enter judgment for $81,513 against defendant Insurance Company to be discharged upon the payment of $29,692.64 with interest, costs, and attorney's fees.

In its answer, defendant Insurance Company admitted that it gave its labor and material payment bond for defendant Poovey. It averred that a dispute had arisen between defendant Poovey and plaintiff over the amount due plaintiff and the number and type of supplies sold to Poovey by plaintiff. Defendant Insurance Company further averred that defendant Poovey was primarily

liable for any indebtedness to plaintiff, and that if it was indebted to plaintiff, any such liability was secondary to that of defendant Poovey, and should the trial court find it primarily liable, it was entitled as a matter of law to indemnification and judgment over against defendant Poovey by virtue of the terms of the payment bond.

Defendant Insurance Company's answer also contained a cross claim against defendant Poovey. The cross claim realleged the basic factual allegations of the complaint and further alleged that defendant Poovey refused to acknowledge whether he owed the amount claimed by plaintiff. Defendant Insurance Company alleged that in applying for its labor and material payment bond, defendant Poovey agreed to indemnify fully Insurance Company for any loss or expense including attorney's fees which Insurance Company might sustain. Consequently, defendant Insurance Company alleged that in the event it was adjudged to be indebted to plaintiff, it was entitled to indemnification and judgment over against defendant Poovey. Defendant Insurance Company also contended in its cross claim that it was entitled to recover from defendant Poovey for services rendered in completing Poovey's construction contract with Burke County and for investigating this matter. Insurance Company averred that it had already incurred and paid losses of $19,273.04 on behalf of defendant Poovey and that it had possible prospective losses as a result of this action of $29,087.31, plus a claim of Estes Plumbing, Inc., against Poovey for $7,164.61. Defendant Insurance Company averred that it had previously incurred expenses of $805.05 in this matter and that it would incur additional expenses and attorney's fees of $6,000 which it was entitled to have reimbursed. Accordingly, Insurance Company requested that if it and defendant Poovey were adjudged to be liable to plaintiff that it then be entitled to judgment over against Poovey for approximately $62,330.01 less any amount it might receive from Burke County on the construction contract which it had completed.

Defendant Poovey filed his answer on 1 November 1978. He made two motions. First, he moved that the action be dismissed pursuant to G.S. 1A-1, Rule 12(b)(6). Second, he asked that the court dismiss the action because plaintiff had failed to join a necessary party, Ted A. Poovey Plumbing, Inc. He also denied certain allegations of the complaint and asked that plaintiff be allowed to recover nothing.

By order of Judge H. L. Riddle, Jr., entered 29 April 1980, defendant Poovey was permitted to amend his answer to include a counterclaim in which he alleged that before he entered into the construction contract with Burke County, Sonny Hough, who was a salesman and agent for plaintiff, compiled a list of the plumbing materials that would be needed by Poovey to complete the proposed plumbing work on the Center on which Poovey planned to bid. Defendant Poovey alleged that Hough, acting as plaintiff's agent, agreed with Poovey to furnish all supplies and materials needed in the construction of the Center for $19,500, and, as was customary, a commitment was signed by the parties based on that figure. Poovey claimed that plaintiff was aware of this contract to provide materials for $19,500 and wrongfully presented him with a bill for $29,887.31. He alleged that his liability to plaintiff was limited by his purported contract with plaintiff to the extent of $19,500 less any amount awarded him as damages under the counterclaim.

Defendant Poovey further alleged that as a result of this action his credit rating and ability to proceed in the plumbing business were damaged. Consequently, he asked for $50,000 in actual damages for damages to his character and reputation, and $50,000 as punitive damages.

On 27 November 1978 Judge Donald L. Smith entered an order in which he denied both of defendant's motions to dismiss. Judge Smith concluded as a matter of law that plaintiff's complaint was sufficient to state a cause of action and that plaintiff's allegation that some entity other than defendant Poovey was indebted to plaintiff on his account would not discharge him as defendant in this action.

Plaintiff's reply, filed on 25 April 1980, denied the allegations of defendant Poovey's counterclaim, and renewed plaintiff's request for payment of defendants' indebtedness to it in the revised sum of $28,692.43, with interest and costs.

At trial plaintiff called the credit manager of its Charlotte branch, D. M. Nelson, as a witness. Nelson testified that defendant Poovey had an open account with plaintiff and that plumbing materials needed for the job at the Center were purchased by Poovey on this account and delivered to the job site. Nelson was responsible for keeping records on the Poovey account. All of the

invoices of goods delivered to defendant Poovey on this particular account were mailed to him at his Granite Falls address. These invoices were entered into evidence as plaintiff's exhibits 1 through 21.

Nelson stated that salesmen Ernest Varney and F. L. Huff (Hough) handled the Poovey account for plaintiff. Both salesmen were unavailable and did not testify at the trial. In 1977 salesman Huff (Hough) and defendant Poovey compiled a list of materials that Poovey thought would be necessary for the job. Nelson stated:

> It is certainly not unusual that one of the salesmen sit down with a respective (sic) buyer and once the buyer gives a list of items he felt he needed and compiled a list that the salesman would give him a price. As a matter of fact, that is one of the services that is offered by the salesman to help set up credit accounts. . . .

Plaintiff extended to defendant Poovey a $40,000 line of credit on materials for the Burke County job. This line of credit was an approximation drawn from the amount of materials plaintiff expected to sell defendant Poovey for the job. Nelson testified:

> I talked with Mr. Poovey and with the salesman and I arrived at approximately forty thousand dollars needed on the job, so we set up a line of credit.

Nelson's testimony also tended to reveal that plaintiff delivered materials to the Center, and defendant Poovey was billed for them from August 1976 through February 1977. When defendant Poovey had paid nothing on these bills by February 1977, plaintiff placed his account on C.O.D. Defendant Poovey purchased approximately $12,000 worth of goods C.O.D. after his credit was terminated.

Plaintiff's witness Vernon A. Hefner, who was general superintendent of the construction of the Center, testified for plaintiff that materials for defendant Poovey were often delivered at the job site when Poovey was not present. At such times Hefner would sign and take possession of the materials for Poovey. Hefner identified several of plaintiff's receipts which he had signed. Hefner stated that Poovey was involved in two other

construction jobs simultaneously with his work on the Center. Hefner sometimes saw defendant Poovey transport materials away from the Center by truck. Furthermore, he testified that more plumbing materials were delivered to defendant Poovey at the Center construction site than were needed to complete defendant Poovey's job.

Plaintiff offered into evidence portions of defendant Poovey's deposition and called Poovey as an adverse witness. Defendant Poovey's testimony on cross examination tended to show that he worked with plaintiff's salesman Hough in establishing his line of credit for this job. Defendant Poovey's exhibit 2 consisted of the "work sheets" that he and Hough drew up. Poovey testified as to their contents. The work sheets were partially in defendant Poovey's handwriting and partially in Hough's. Hough set the prices on the individual materials and gave Poovey a summary figure of $19,500 for all the materials listed. Poovey testified that he considered this to be a contract price between him and plaintiff. Defendant Poovey testified that Hough told him that: "he had the authority to deal with me [Poovey] and to lock in these prices as a salesman of the Noland Company." Poovey stated that he accepted plaintiff's offer at the price stated in the agreement, and he used that amount in computing and submitting his bid on the Center.

Defendant Poovey signed approximately five of plaintiff's 21 invoices, thus accepting delivery of materials for the job. Poovey testified that no other person, including Hefner, had authority to sign for, and cause him to be indebted for, any of the materials delivered. He testified that a number of the items which plaintiff's invoices showed as having been delivered to him had not in fact been ordered by him nor delivered to him. Poovey made approximately 15 trips to plaintiff's offices to complain about the delivery of unneeded materials and to have improper billing corrected.

Poovey also testified that many of the materials that he received at the Center were not designed to be used on that job, but were to be used on the Alleghany Hospital project on which he was working at the same time. Poovey testified that plaintiff's agents had informed him beforehand that they would do this. They told him that if he ordered a larger quantity of materials

under one job that he would be billed under the one job and receive a discount. Poovey stated that this was a common practice in his business.

At the close of plaintiff's evidence, defendant Poovey stipulated that he was liable to defendant Insurance Company on its cross claim for $31,604.05, and further that Insurance Company was entitled to a judgment on the cross claim against Poovey in that amount plus any amount that the trial court awarded plaintiff against Insurance Company in this action.

Defendant Poovey then offered into evidence two exhibits consisting of the handwritten work sheets on which he and Hough allegedly calculated the total price for plumbing materials to be used on the Center job.

The jury returned its verdict in which it found that defendant Poovey was indebted to plaintiff on a stated account in the amount of $24,096.27. In its judgment filed 17 July 1980, the trial court ordered that plaintiff recover from defendant Poovey $24,096.27 with interest thereon, from the date of judgment until paid, and costs. The trial court further ordered defendant Insurance Company to pay plaintiff $81,513 to be discharged upon the payment of $24,096.27. Defendant Poovey's counterclaim for damages to his character and reputation was dismissed because no evidence was introduced in support of its allegations. The trial court ruled that in the event that defendant Insurance Company paid this judgment or any part thereof, it should have judgment over against defendant Poovey for any such amount it paid. Pursuant to defendant Poovey's stipulation during the trial and evidence there presented, the trial court found that defendant Insurance Company was entitled to recover $30,981.96 from defendant Poovey on its cross claim for money expended, under the terms of its bond, by Insurance Company prior to trial. All of the parties appealed from this judgment.

*Purrington and Purrington, by A. L. Purrington, Jr., for plaintiff appellant.*

*Byrd, Byrd, Ervin, Blanton and Whisnant, by Robert B. Byrd and Lawrence D. McMahon, Jr., for defendant appellant Ohio Casualty Insurance Company.*

*Triggs and Mull, by C. Gary Triggs and Wayne O. Clontz, for defendant appellant Ted A. Poovey.*

MORRIS, Chief Judge.

## I. Defendant Poovey's Appeal

Defendant Poovey first contends that it was error for the trial court to deny his motions for directed verdict. Poovey insists that plaintiff presented insufficient evidence of the number and kind of goods that it delivered to him for use in the job at the Center and for which it now claims Poovey is indebted to it for payment. In order to prove the quantity and price of the materials and supplies it allegedly delivered to defendant Poovey plaintiff introduced into evidence some 26 exhibits consisting of invoices and freight bills listing the materials it claims to have delivered and sold to Poovey. Five of these exhibits were signed by Poovey, others show no signature evidencing receipt, and some were receipted by other individuals working at the Center. The general superintendent of the construction job at the Center, Vernon Hefner, testified for plaintiff that he signed for and took delivery of the several shipments of goods delivered to Poovey. Each time Hefner had the goods unloaded at Poovey's tool house and informed Poovey that the goods had arrived. Hefner testified that he did not work for Poovey and that he had no relationship with him other than the fact that they were both contractors on the job. Hefner stated that defendant Poovey was not on the job very much and when there was no one there to receive the materials he would sign for them. Hefner stated with regard to his signing for defendant Poovey's materials: "I thought I was doing him a favor. We had done that for years; as long as I had been in the construction business. Mr. Poovey seemed to appreciate it, but he did not tell me to sign for him."

Defendant Poovey argues that the trial court should have directed a verdict in his favor on all of the invoices "except those particular invoices and freight bills that had, in fact, been received by Mr. Poovey as established in the evidence and shown in the body of the record on appeal." Poovey submits that plaintiff's evidence shows that he only received a portion of the materials and supplies listed on the invoices and freight bills. He contends that this evidence when viewed in the light most favorable to plaintiff did not show that all of the goods either billed or invoiced to defendant Poovey had, in fact, been *received* by Poovey.

A directed verdict may be granted only if, as a matter of law, the plaintiff's evidence when taken as true and considered in the light most favorable to plaintiff is insufficient to justify a verdict for plaintiff. *Investment Properties v. Allen*, 281 N.C. 174, 188 S.E. 2d 441 (1972) (*reversed on other grounds*, 283 N.C. 277 (1973) )); W. Shuford, N.C. Practice and Procedures § 50-5 (1975). Conflicts, contradictions and inconsistencies which appear in the evidence must be resolved in plaintiff's favor. *Snider v. Dickens*, 293 N.C. 356, 237 S.E. 2d 832 (1977); *Insurance Co. v. Cleaners*, 285 N.C. 583, 206 S.E. 2d 210 (1974); *Summey v. Cauthen*, 283 N.C. 640, 197 S.E. 2d 549 (1973). A verdict should not be directed when the facts are in dispute. *Cutts v. Casey*, 278 N.C. 390, 180 S.E. 2d 297 (1971); *Jones v. Development Co.*, 16 N.C. App. 80, 191 S.E. 2d 435, *cert. denied*, 282 N.C. 304, 192 S.E. 2d 194 (1972).

[1]   A transaction such as this for the sale of goods is governed by Article 2 of the U.C.C. G.S. 25-2-301 specified "[t]he obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in accordance with the contract." In order to show that defendant Poovey was indebted to it for payment for certain goods plaintiff did not have to show that defendant Poovey *received* these goods, but rather it had to show that it *delivered* these goods and defendant Poovey accepted delivery. The manner in which a seller must tender delivery is specified in G.S. 25-2-503 which states:

> (1) Tender of delivery requires that the seller put and hold conforming goods at the buyer's disposition and give the buyer any notification reasonably necessary to enable him to take delivery. . . . (a) tender must be at a reasonable hour, and if it is of goods they must be kept available for the period reasonably necessary to enable the buyer to take possession; but (b) unless otherwise agreed the buyer must furnish facilities reasonably suited to the receipt of the goods.

According to G.S. 25-2-606:

> (1) Acceptance of goods occurs when the buyer (b) fails to make an effective rejection . . ., but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or (c) does any act inconsistent with the seller's ownership. . . .

G.S. 25-2-602 delineates the manner and effect of a buyer's rightful rejection of goods. Section (1) provides:

Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller.

The issue here is not whether defendant Poovey actually received these goods himself, but whether plaintiff adequately tendered delivery of these goods, and whether defendant Poovey accepted or rejected them. The fact that defendant Poovey did not sign all of the invoices himself is not conclusive evidence that these goods were not delivered and that Poovey did not accept them.

[2] The evidence presented in this case was sufficient to create an issue of fact for the jury as to whether plaintiff properly tendered delivery of these plumbing materials and whether defendant Poovey accepted them. The materials listed on the invoices and freight bills were all assigned for delivery to defendant Poovey at the Center. Plaintiff's witness D. M. Nelson testified that copies of all the invoices were sent to Poovey at his Granite Falls address. The last invoice listing goods for which plaintiff did not receive payment was dated 6 June 1977. Mr. Nelson testified:

Prior to the deposition of the defendant Poovey in March of 1979, I had not received any complaints from the defendant about the invoices of the delivery of merchandise.

In opposition to this evidence defendant Poovey testified on cross examination as follows:

Yes, sir. While the job was processing, I went and made fourteen or fifteen trips into Mr. Strickland's office and Mr. Vanhorn's, that was the salesman that took over Sonny Hough, and I made all kinds of complaints that we didn't need all this, all this that was coming.

Plaintiff's evidence tended to show that Poovey accepted delivery of all the materials listed on plaintiff's exhibits. Defendant Poovey's testimony tended to indicate that the goods were all delivered to him, but that he notified plaintiff of his rejection of those in excess of his needs. Clearly, the trial court was correct in refusing to direct a verdict for defendant Poovey.

Defendant Poovey alleges that the trial court committed prejudicial error in various portions of its instructions.

[3] The trial court instructed on issue No. 1, which was:

Is the defendant, Ted A. Poovey, indebted to the plaintiff, Noland Company, Incorporated, on an open account or an account stated?

Defendant Poovey argues that it was error for the trial court to instruct on an account stated because no evidence was presented suggesting that there had been transactions between plaintiff and him which resulted in the creation of matured debts or that the parties by agreement had computed a balance which the debtor promised to pay. Poovey submits that the issue of an account stated should not have been applied in this case because he never admitted the correctness of the invoices and bills sent to him, i.e., the account in question. He also maintains that by so instructing the jury, the trial court left them no option but to find defendant Poovey indebted to plaintiff on either an open or stated account.

Immediately following the disputed portion of the court's instructions it charged as follows:

[T]he burden of proof is on the plaintiff to satisfy you by the greater weight of the evidence that the defendant is indebted to the plaintiff. Now if you are so satisfied after the Court has instructed you thereon, ladies and gentlemen, you will answer the issue either by writing in the words Open Account, or the words Account Stated as you find the truth to be, or neither or no if the plaintiff has failed to so satisfy you.

Clearly, when the charge on the first issue is read in context with what followed, the jury was given the option to find in ways other than that defendants were indebted on account to plaintiff.

As stated by Judge Webb in *Mahaffey v. Sodero*, 38 N.C. App. 349, 247 S.E. 2d 772 (1978):

An account stated is a contract. It is an agreement between parties that an account rendered by one of them to the other is correct. Once this agreement is made the account stated constitutes a new and independent cause of action superseding and merging the antecedent cause of action. The

jury may infer from the retention without objection of an account rendered for a reasonable time by the person receiving a statement of account that the person receiving the statement has agreed that the account is correct. *See Teer Co. v. Dickerson, Inc.*, 257 N.C. 522, 126 S.E. 2d 500 (1962) and 1 Am. Jur. 2d, Accounts and Accounting, § 21, p. 395.

38 N.C. App. at 351, 247 S.E. 2d at 774.

Plaintiff presented evidence which tended to show the sale and delivery of numerous goods by it to defendant Poovey and that Poovey was periodically invoiced for these goods between August 1976 and February 1977. Plaintiff's evidence also tends to show that defendant Poovey did not make his objections to the sale and delivery of these goods known to plaintiff until March 1979. Considered alone, this evidence could reasonably warrant a conclusion that by failing to object to the bills and invoices he received from plaintiff within a reasonable time, Poovey impliedly agreed to the account stated thereby. Therefore, it was not error for the court to submit its first issue with regard to an account stated to the jury.

[4] Defendant Poovey further objects to the court's instructions with regard to Poovey's possible indebtedness on an open account on the grounds that there was no evidence to justify such an instruction. We disagree.

[A]n ordinary open account results where the parties intend that the individual transactions are to be considered as a connected series rather than as independent of each other, a balance is kept by adjustment of debits and credits, and further dealings between the parties are contemplated. . . . *McKinnie Bros. v. Wester*, 188 N.C. 514, 125 S.E. 1 (1924); 1 Am. Jur. 2d Accounts and Accountings § 4 (1962).

*Electric Service, Inc. v. Sherrod*, 293 N.C. 498, 503, 238 S.E. 2d 607, 611 (1977). Plaintiff's credit manager, D. M. Nelson, testified that plaintiff established a $40,000 line of credit for defendant Poovey on the Center job. Nelson's testimony further tended to show that Poovey was billed periodically on this credit account, a running balance was maintained on the account, and that continuous dealings based on this account were contemplated and did occur. Hence, we think it was entirely proper for the court to instruct the jury with regard to the concept of open accounts.

[5]  Defendant Poovey next objects to the following portion of the court's charge:

> Now an Account Stated is an agreement between the parties to the account that the total of the account and each item shown thereon is correct. If the debtor admits the correctness of the account, an Account Stated results. Of course, that would not apply in this case.

Poovey contends that this portion of the instructions was in error because the court had previously instructed the jury that they were to determine whether Poovey was indebted to plaintiff on an open or a stated account and then in this paragraph the court "explicitly indicates to the jury that the concept of an account stated would not apply in this case."

When read in context with the portion of the charge immediately following this disputed paragraph it becomes evident that there was no error. The court continued its charge as follows:

> If a bill is sent to a debtor or he is notified of his balance owing and makes no protest or objection to its correctness within a reasonable time, such failure creates an account stated. But in deciding what was a reasonable time for protest or objection you, the jury, should consider the nature of the transaction, the relationship of the parties, their distance from each other, and the means of communication between them, their business capacity, their intelligence or want of intelligence, and the usual course of business.

This further instruction relates to the possibility that an account stated was created in this case by implied agreement. It becomes clear when the disputed language is read with what followed that the court was referring to the fact that there was no evidence that defendant Poovey ever expressly admitted the correctness of the indebtedness on his account which plaintiff claimed was due. This was consistent with defendant Poovey's contentions. The jury could not find an account stated existed in this case on the basis of an express admission. However, there was evidence presented from which the jury could find that there was an account stated on the basis of an implied admission. Plain-

tiff's witness Nelson's testimony showed that defendant Poovey made no objection to the goods which plaintiff allegedly delivered to the Center until more than a year and a half after the last invoice was mailed by plaintiff. The court's statement of the law with regard to an account stated arising from an implied admission was correct. There was no error in this portion of the court's charge.

[6] Defendant Poovey argues that the court inaccurately summarized his evidence and contentions with regard to his contention that a contract for the sale of plumbing materials existed between him and plaintiff whereby plaintiff agreed to supply the materials needed for the Center job for $19,500. Specifically, Poovey objects to the court's failure to refer to his exhibits I and II, which consisted of the work sheets compiled by Poovey and plaintiff's salesman, Hough, as illustrative or corroborative evidence. With regard to this contention the court charged:

> Now the defendant Poovey, ladies and gentlemen, on the other hand, says and contends to you by his cross examination and other evidence, that he entered into a contract with an agent of the plaintiff, a Mr. Hough, in the sum of Nineteen Thousand Five Hundred Dollars for all of the plumbing materials on the Burke County Job."

"The Judge shall not be required to state such evidence except to the extent necessary to explain the application of the law thereto, provided, the judge shall give equal stress to the contentions of the various parties." G.S. 1A-1, Rule 51(a). A summary of the material aspects of the evidence which is sufficient to illustrate the controlling legal principles is all that is required of the court's recapitulation of the evidence. W. Shuford, N.C. Civil Practice and Procedure § 51-3 (1975). In view of the laxness of the requirement of Rule 51 with regard to the charge on the evidence, we find that the court's failure to refer to defendant Poovey's exhibits when instructing the jury on his contentions was not error. Defendant Poovey contends that a portion of the court's instruction was erroneous because it only required the jurors to find that plaintiff "sold and delivered" the goods to defendant Poovey. Defendant Poovey "argues and contends that unless the various items of plumbing materials were properly received on the construction job site . . . then this appellant

would not be responsible for tendering the payment thereof. . . ." Moreover, defendant argues that the court erred by not properly instructing on the necessary elements of delivery.

The court did not have to instruct, as defendant Poovey insists, that Poovey *received* the alleged goods. As was previously discussed, the appropriate sections of the U.C.C. require that the fact finder determine only that the seller transferred and delivered the goods and the buyer accepted the goods if they are to find the buyer indebted to the seller for the price of the goods. Hence, we find no error in the court's failure to instruct the jurors that they had to find that defendant Poovey received the goods.

[7] Defendant Poovey submits that the trial court erroneously failed to instruct on the essential elements of delivery "to the proper party or an agent thereof." He argues that such instructions were material in this instance, because plaintiff's exhibits, the invoices and freight bills, as well as other evidence, showed that many of the goods were not delivered to an agent or person authorized to accept them on behalf of Poovey as was required to show an adequate delivery. The premise on which defendant Poovey bases this argument is wrong. The identity of the person accepting the goods is immaterial to the question of whether there was a delivery. G.S. 25-2-503 "Manner of seller's tender of delivery" requires only that "the seller put and hold conforming goods at the buyer's disposition and give the buyer any notification reasonably necessary to enable him to take delivery." An instruction as to who was authorized to take delivery of the goods for defendant Poovey was unnecessary.

[8] Defendant Poovey submits that the trial court committed error in failing to instruct the jury with regard to a substantive issue of this case which arose from the evidence and for which he submitted a request for special instructions. Specifically, he argues that the trial court neglected to instruct the jury on the law with regard to contracts. Defendant Poovey claims that his evidence, consisting of his own testimony under cross examination and of his exhibits, showed that he and plaintiff through its agent, salesman Hough, agreed that plaintiff would supply all materials needed to complete the plumbing job at the Center for the price of $19,500. Therefore, he contended plaintiff should not have been allowed to recover in excess of that amount.

The trial judge "shall declare and explain the law arising on the evidence given in the case." G.S. 1A-1, Rule 51(a). In this case the trial court did not err by not including an instruction on the law of contracts in its charge. Insufficient evidence was presented to make the possibility of a contract an issue here. Defendant Poovey's evidence shows that he and plaintiff's agent compiled a list of materials and their prices that might possibly have been used on this job. Nowhere in the evidence was it indicated that this pricing constituted a contract to supply all the materials for the job at a set price as is now contended by Poovey. Defendant Poovey's testimony with regard to the alleged contract consisted of the following:

> I met with Mr. Hough, salesman of the Noland Company to figure the Burke Human Resources job and I met with him several times and helped me price any take over the job when he came to my house. When I first met Mr. Hough, he said he was a salesman from Horn & Wilson but when we were figuring this job, he told me he was working for the Noland Company. Based on the meetings with Mr. Hough of the Noland Company, I began to give orders to the Noland Company and he wrote them up on a pad. Mr. Hough called the fixtures company and other companies to get the figures together for the Burke Human Resources job and he said, "right here's the figure that I'm going to come up with and we will lock them in." The figure was nineteen thousand five hundred and some dollars. That was the price I agreed with the Noland Company.

> Poovey Exhibit No. 2 is the work sheets that Mr. Hough and I put together. That exhibit was prepared by Mr. Hough and me and I kept it at my office at home. This exhibit is a take-off on the plans and it comes to a conclusion to figure the job and these materials were the figures that I needed to use to bid on. Mr. Hough set on the prices on the materials himself. Part of this exhibit is in his writing and part of it in mine. And after we went over the plans, he told me how much it would cost for the supplies that I needed on this job and that was the purpose of figuring the job and these papers. I had other supplies left from other jobs that I intend to use at the Burke Resources Center and after my discussion with Mr. Hough, the figures on this exhibit were to lock in the job if I

did business with the Noland Company and if I gave him the Contract. When I discussed the matter with Mr. Hough, I considered it was a Contract and that was the point of the discussion. He told me he had the authority to deal with me and to lock in these prices as a salesman of the Noland Company. He had about three weeks of time and he conferred with other people in the Noland Company and after he came back to see me, I accepted the offer to purchase these materials at the prices he gave me.

I did have a contract with the Noland Company and Mr. Sonny Hough kept the record except records I have where the job was bid. Mr. Hough was the person from the Noland Company that helped me figure the job. He gave me a contract on behalf of the Noland Company and it was acknowledged from the manager. I had to know how much materials that I was buying from the Noland Company would cost before I could make a bid on the job.

. . .

Q. And Mr. Hough and you agreed to the specific things that would be used at the Burke County Human Resources; that's correct, isn't it?

A. Yes, sir.

At most defendant Poovey's evidence showed an offer by plaintiff to sell him the materials at the prices and in the quantities listed on the work sheets upon order of defendant Poovey. Poovey testified that there was a contract, but his evidence does not indicate what any of the terms of that contract were. Defendant Poovey's evidence presented only an issue as to the amount due on his account with plaintiff.

Defendant Poovey has alleged that the court committed error in other portions of its charge. We have examined these other areas of the charge, but we do not think defendant Poovey's contentions with regard to them merit discussion. Thus defendant Poovey's assignments of error with regard to the court's charge are all overruled.

As his last argument defendant Poovey contends that the court erred by failing to grant his motion to set aside the verdict

and to grant a new trial, and that the court erred by signing the judgment. He argues that the evidence presented at trial was insufficient to support the verdict. Similarly, he submits that the court should not have signed its judgment because "the Judgment did not conform to the evidence presented at trial and was rendered by a jury which had not been properly instructed, . . ."

> "The propriety of granting a motion for judgment notwithstanding the verdict is determined by the same considerations as that of a motion for a directed verdict. . . ."

> The motion for judgment n.o.v. is that judgment be entered in accordance with the movant's earlier motion for a directed verdict, nothwithstanding the contrary verdict actually returned by the jury. Rule 50(b), Rules of Civil Procedure, G.S. Chapter 1A.

*Summey v. Cauthen,* 283 N.C. 640, 648, 197 S.E. 2d 549, 554 (1973). We previously discussed the court's denial of defendant Poovey's motions for directed verdict, and found that there was sufficient evidence to go to the jury and that the court's action was correct. There is no need for further discussion of this issue with regard to Poovey's argument for judgment notwithstanding the verdict.

We have also determined that the court's charge was without error. This contention needs no further discussion.

## II. Defendant Insurance Company's Appeal.

[9]  Plaintiff sought to hold defendant Insurance Company liable through its obligation as surety on the payment bond securing payment for all labor and materials used in the performance of defendant Poovey's contract with Burke County to build the Center. The court found defendant Insurance Company to be liable to plaintiff to the full extent of the coverage of the bond, $81,513. This liability was to be discharged upon the payment to plaintiff of $24,096.27, the amount of Poovey's liability to plaintiff.

Defendant Insurance Company contends that the court erred by failing to submit a material issue to the jury. Defendant Insurance Company alleges that no issues were submitted nor any instructions given the jury concerning its liability under the terms of the payment bond as distinguished from the liability of

defendant Poovey on his account. Defendant Insurance Company argues that defendant Poovey would be liable for anything he purchased from plaintiff on his account regardless of whether it was required for use at the Center, but defendant Insurance Company would be liable only for those materials which were used or required for use for the plumbing job at the Center. Therefore, it submits it was entitled to have a separate issue submitted to the jury with regard to its liability under the bond.

The record shows that after all of the evidence was in, defendant Insurance Company requested the court to submit to the jury separate issues with regard to each defendant's recovery. It made this request so that its liability could be determined under the terms of the payment bond. The court denied this oral request. Afterwards, but before the charge, defendant Insurance Company tendered to the court a written request for specific instructions which included a request that the court instruct the jury separately on the issue of its liability. The issues submitted by the court in its charge dealt only with the liability of defendant Poovey. The court evidently assumed that defendant Insurance Company would be liable for the same amount for which the jury found defendant Poovey liable.

> The rule of practice is well established in this jurisdiction that when a request is made for a specific instruction, correct in itself and supported by evidence, the trial court, while not obliged to adopt the precise language of the prayer, is nevertheless required to give the instruction, in substance at least, and unless this is done, either in direct response to the prayer or otherwise in some portion of the charge, the failure will constitute reversible error.

*Bass v. Hocutt*, 221 N.C. 218, 220, 19 S.E. 2d 871, 872 (1942), quoted in *Camby v. Railway Co.*, 48 N.C. App. 668, 673, 269 S.E. 2d 719, 722, *cert. denied*, 301 N.C. 527, 273 S.E. 2d 452 (1980).

In this case defendant Insurance Company was liable to plaintiff only upon the breach of the terms of the payment bond which it signed as surety for principal, defendant Poovey. The bond itself specified:

> [I]f Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material *used or*

*reasonably required for use* in the performance of the Contract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

1. A claimant is defined as one having a direct contract with the Principal for labor or with a subcontractor of the Principal, material, or both, *used or reasonably required for use* in the performance of the Contract . . . (Emphasis added.)

G.S., Chapter 44A, Article 3, *Model Payment and Performance Bond* establishes requirements for payment bonds. G.S. 44A-30(b) states:

Every bond given by a contractor to a contracting body pursuant to this Article shall be conclusively presumed to have been given in accordance herewith, whether or not (sic) such bond be so drawn as to conform to this Article. This Article shall be conclusively presumed to have been written into every bond given pursuant thereto.

This particular provision took effect on 1 September 1974. 1973 N.C. Sess. Laws Ch. 1194, § 1. The construction contract between defendant Poovey and Burke County which this payment bond was given to secure was executed on 28 June 1976. Therefore, G.S. 44A-30(b) effectively amends this payment bond so that it includes the requirements of G.S., Chapter 44A, Art. 3. G.S. 44A-27 provides generally for actions brought on payment bonds as follows:

(a) Subject to the provisions of subsection (b) hereof, any claimant who has performed labor or furnished materials in the prosecution of the work required by any contract for which a payment bond has been given pursuant to the provisions of this Article, and who has not been paid in full therefor before the expiration of 90 days after the day on which the claimant performed the last such labor or furnished the last such materials for which he claims payment, may bring an action on such payment bond in his own name, to recover any amount due him for such labor or materials and may prosecute such action to final judgment and have execution on the judgment.

G.S. 44A-25(5) defines labor and materials as:

(5) "Labor or materials" shall include all materials furnished or labor performed in the prosecution of the work called for by the construction contract regardless of whether or not the labor or materials enter into or become a component part of the public improvement, and further shall include gas, power, light, heat, oil, gasoline, telephone services and rental of equipment or the reasonable value of the use of equipment directly utilized in the performance of the work called for in the construction contract.

Thus, as surety on this payment bond defendant Insurance Company was liable only for payment for "materials furnished . . . in the prosecution of the work called for by the construction contract." It was not necessarily liable for all of the materials allegedly delivered to Poovey at the Center.

Here there was definitely an issue of fact as to whether all or only part of the materials plaintiff allegedly delivered to defendant Poovey were actually used by him in the construction of the Center. Defendant Poovey testified that plaintiff delivered to the Center far more materials than were needed to complete that job. He further testified that plaintiff's salesman told him that plaintiff would be sending materials needed for other jobs on which Poovey was working to the Center job site so that volume orders could be placed and certain discounts obtained. Both defendant Poovey and construction superintendent Hefner testified that some materials plaintiff delivered to the Center were carried away, and Poovey testified that these materials were used in other jobs. This evidence tended to show that some of the materials were not used at all in the performance of defendant Poovey's work at the Center. If the jury were to find that this was so, defendant Insurance Company would not be liable under G.S., Chapter 44A, Article 3 for the cost of the materials not so used.

The special instruction which defendant Insurance Company tendered to the court with regard to the issue of its liability separate from that of defendant Poovey was correct. Defendant Poovey would be liable for all materials plaintiff delivered to him and charged to his account no matter where they were used, but defendant Insurance Company would be liable only for those goods used by defendant Poovey in the performance of his work

under his contract with Burke County. The issue presented by defendant Insurance Company in its request for special instructions was also supported by the evidence. Hence, we think it was reversible error for the trial court to fail to include the requested instruction in its charge in some manner. We reverse as to defendant Insurance Company and remand this case insofar as it pertains to that defendant to the superior court with instructions that it conduct a new trial to determine what amount of the $24,096.27 of which defendant Poovey was adjudged to be liable to plaintiff represents payment for materials plaintiff furnished defendant Poovey for use in the prosecution of the work called for by the construction contract covered by the payment bond.

### III. Plaintiff's Appeal.

[10]   Plaintiff submits that the court should have allowed interest on the judgment against defendant Poovey from 10 July 1977. The court allowed interest on plaintiff's $24,096.27 recovery from defendant Poovey from the date of judgment, 23 July 1980, until paid.

The materials listed in the last invoice upon which this recovery is predicated were shipped on 6 June 1977. Plaintiff contends that each invoice was a bill for the materials listed therein and consequently was a demand for payment. D. M. Nelson's testimony with regard to plaintiff's terms for payment of these bills tended to show that the amount billed on each invoice became due and payable by the tenth day of the month following the date of the invoice. If defendant Poovey paid the bill by the tenth day of the following month after he was billed he would receive a two per cent discount. If payment was received after the tenth of the following month Poovey was required to pay the entire amount of the invoice. If the bill was unpaid after two or three months a surcharge was added.

Plaintiff contends that it would be entitled to interest on the amount of each invoice from the tenth day of the month following the month of the invoice date. However, because the jury awarded it a lump sum without distinguishing for which of the materials defendant Poovey was liable, it is impossible to tell which of the materials or invoices were omitted from the gross amount of the verdict. Therefore, plaintiff contends, the court

should have allowed interest from 10 July 1977, the month after the date of the last invoice to defendant Poovey.

Generally, "[i]nterest does not run on an account until there is a demand and refusal to pay. (Citations omitted.)" *Hunt v. Hunt and Lucas v. Hunt,* 261 N.C. 437, 444, 135 S.E. 2d 195, 200 (1964). In this case the jury found that defendant Poovey was indebted to plaintiff on an account stated, which is a new contract based on the acceptance of or failure to object to an account rendered. *Mahaffey v. Sodero,* 38 N.C. App. 349, 247 S.E. 2d 772 (1978); *Carroll v. Industries, Inc.,* 296 N.C. 205, 250 S.E. 2d 60 (1978).

The North Carolina law with regard to the allowance of interest on recoveries for breach of contract was aptly summarized by Justice Moore in *Equipment Co. v. Smith,* 292 N.C. 592, 601-02, 234 S.E. 2d 599, 604 (1977). There he stated:

> The trend in North Carolina is . . . toward allowing interest in almost all cases involving breach of contract, *Rose v. Materials Co.,* 282 N.C. 643, 194 S.E. 2d 521 (1973), and where the amount of damages can be ascertained from the contract, interest is allowed from the date of the breach. G.S. 24-5; *Rose v. Materials Co., supra; General Metals v. Manufacturing Co.,* 259 N.C. 709, 131 S.E. 2d 360 (1963); *Bond v. Cotton Mills,* 166 N.C. 20, 81 S.E. 936 (1914). In the absence of an agreement, the injured party is entitled to interest at the legal rate of six percent. G.S. 24-1; *Rose v. Materials Co., supra.*

*See also, Investment Properties v. Allen,* 281 N.C. 174, 188 S.E. 2d 441 (1972).

Defendant Poovey presented evidence which tended to show that some of the materials listed on plaintiff's invoices which had allegedly been delivered to him, had not in fact been so delivered. Thus, the amount due on defendant Poovey's stated account was not ascertainable until the jury returned its verdict. The jury returned a verdict in which it found defendant Poovey to be indebted for several thousand dollars less than the total value of the materials listed on the invoices. It was impossible for the court to determine from this verdict for which of the materials listed on the invoices defendant Poovey was indebted. Under

these circumstances we think it was proper for the court to defer the award of interest against defendant Poovey until the time of the judgment. Only at that time was the amount due plaintiff on the account stated clearly ascertainable.

Likewise, plaintiff submits that the court erred in allowing interest on the recovery against defendant Insurance Company only from the date of judgment. This argument has been rendered moot by our reversal of the court's judgment with regard to defendant Insurance Company.

Plaintiff argues that the judgment in this action is based on a compromise verdict and is, therefore, in error, and that a new trial should be ordered because the verdict and judgment were not supported by the evidence. The record does not indicate that plaintiff made a motion asking the court to set aside the verdict or for a new trial. Therefore, we will not consider these assignments of error. Accordingly, we find no error in this case with regard to plaintiff.

As to defendant Poovey, we find no error.

As to defendant Insurance Company, we find error and remand.

As to plaintiff, we find no error.

Judges WEBB and WHICHARD concur.