THOMAS M. McINNIS & ASSOCIATES, INC. v. JANET H. HALL

No. 601A85

(Filed 4 November 1986)

### 1. Rules of Civil Procedure § 60.2— failure to respond to complaint—reliance on husband's assurances—excusable neglect

Defendant's failure to respond to plaintiff's complaint was the result of excusable neglect where defendant did not respond upon the assurance by her husband that the matter had been resolved by payment of a judgment in a prior action against the husband and there was therefore no necessity to respond; defendant was aware that the prior action against her husband was based upon the very auction contract on which she was being sued and that her husband paid $7,964.29 to satisfy the judgment entered against him in that action; defendant was also aware that this payment by her husband was not made until three days after the filing of the complaint in the second action and three days prior to service upon her of the summons; and it was therefore quite reasonable for defendant to have concluded that in suing her plaintiff was only trying to get payment of the judgment in the first action, that payment of this judgment by her husband resolved all controversy, and that there was no need to respond to the complaint.

### 2. Judgments § 35.1— action on contract against husband—action on same contract against wife not barred by res judicata

*Res judicata* did not apply to bar plaintiff's action to recover on an auction contract where defendant alleged that a prior action by plaintiff against her husband on the same contract resulted in judgment in plaintiff's favor, since contracts joint in form are several in legal effect, and the same cause of action was therefore not involved.

### 3. Judgments § 37— collateral estoppel—determination of issue in prior trial

The issue of plaintiff's entitlement to recover prejudgment interest under its auction contract was actually determined in plaintiff's prior action against defendant's husband for collateral estoppel purposes where plaintiff requested an award of interest from the date of sale after the jury rendered its verdict, and the trial judge made a determination that plaintiff was not entitled to interest from the date of sale as a matter of law.

### 4. Interest § 2; Judgments § 55— breach of contract—interest from date of breach—question of law

Where a jury verdict confirmed the existence of an auction contract, established that it was breached by one seller, and awarded plaintiff the commission fixed by the contract, plaintiff's entitlement to interest from the date of sale was a question of law properly within the province of the trial judge, not a question of fact for the jury, and plaintiff did not waive this question by failing to request a jury instruction on this issue.

**5. Judgments § 36— collateral estoppel—prior erroneous judgment**

The fact that a prior judgment was based on an erroneous determination of law or fact does not as a general rule prevent its use for purposes of collateral estoppel.

**6. Judgments § 36— defensive use of collateral estoppel—mutuality of estoppel no longer necessary**

Mutuality of estoppel is no longer required for the defensive use of collateral estoppel when the party to be collaterally estopped had a full and fair opportunity to litigate the issue in question in the earlier action. Therefore, despite the absence of mutuality of estoppel, defendant wife, who was a party to an auction contract but not a party to a prior action on the contract against her husband, could assert collateral estoppel in an action against her to recover prejudgment interest under the contract.

**7. Rules of Civil Procedure § 60.2— collateral estoppel as meritorious defense**

Collateral estoppel constituted a meritorious defense for the purpose of setting aside a default judgment under Rule 60(b) on the ground of excusable neglect.

Justices PARKER and BROWNING did not participate in the consideration or decision of this case.

Chief Justice BILLINGS concurring in result.

Justice MEYER joins in the concurring opinion.

APPEAL of right by defendant, and cross-appeal by plaintiff, from a decision of a divided panel of the Court of Appeals, 76 N.C. App. 486, 333 S.E. 2d 544 (1985), affirming an order entered 28 February 1984 by *Beale, J.,* in the District Court, RICHMOND County, denying defendant's Rule 60(b)(1) motion to set aside a default judgment.

*Sharpe & Buckner, by Richard G. Buckner, for plaintiff-appellee.*

*Manning, Fulton & Skinner, by Charles B. Morris, Jr., and Barry D. Mann, for defendant-appellant.*

FRYE, Justice.

The parties to this action bring two questions before this Court: 1) whether the trial court erred in finding that defendant's failure to respond to the complaint in this action was the result of excusable neglect; and 2) whether the doctrine of collateral estoppel may constitute a meritorious defense in this case. We answer the first question in the negative and affirm the Court of Appeals

on that issue. We answer the second question yes and reverse the courts below on this issue.

This action stems from the breach of a contract between the sellers (defendant Hall and her husband) and plaintiff auctioneer, Thomas M. McInnis & Associates, Inc. (McInnis). On 21 July 1980, Janet Hall and her husband, Bobby Hall, entered into an auction contract with Thomas M. McInnis & Associates, Inc., which provided that McInnis would sell the Hall's 70-acre poultry farm in exchange for commissions based on a percentage of the sale price. After the highest bidder had been determined at the 22 July 1980 auction, a dispute arose between the highest bidder and the Halls. As a result of the dispute, the sale was never completed.

In December 1980, Bobby Hall filed suit against McInnis seeking $9,750, the amount of earnest money paid in escrow by the highest bidder at the auction sale. In January 1981, without joining Mrs. Hall as a party to the action, McInnis filed a counterclaim asking the court to award it damages for breach of the auction contract, consisting of $7,800 in commissions, together with interest at the legal rate from the date of sale. Judgment was entered in favor of McInnis on 11 March 1983 for $7,800 with interest to run thereon from the date of judgment, not the date of sale.

McInnis did not request that the issue of interest be submitted to the jury, and the jury was not instructed on this issue. Rather, McInnis contended that interest was payable from the date of breach of the contract as a matter of law. The judge expressed the opinion that the question of interest on the breach of contract was a jury question and had been waived in the absence of a timely request that the issue of interest be submitted to the jury. He therefore declined, as a matter of law, to award interest payable from the date of breach and instead awarded interest only from the date of the judgment. McInnis did not appeal this decision.

McInnis thereafter commenced execution proceedings on the judgment against Bobby Hall. On 27 May 1983, it filed a complaint against Janet H. Hall (defendant herein), seeking damages for breach of the auction contract, again seeking $7,800 in commissions together with interest at the legal rate from the date of sale. On 3 June 1983, Bobby Hall paid the judgment against him,

including interest figured from the date of judgment. Three days later, Janet Hall was served with summons and a copy of the complaint that had been filed on 27 May 1983. Under the assurance from her husband that this matter had been resolved and that there was no necessity to respond to plaintiff's complaint, Janet Hall did not file an answer or otherwise respond to the complaint. As a result of this failure, default judgment was eventually entered on 25 July 1983 against her in the amount of $1,678.56, the difference between the interest calculated from the date of sale and the interest awarded from the date of judgment in the earlier action against Bobby Hall.

On 28 February 1984, the trial court denied Janet Hall's Rule 60(b)(1) motion to set aside the default judgment against her, finding that her failure to respond to the complaint constituted excusable neglect but that she had failed to demonstrate a meritorious defense to the plaintiff's claim. The Court of Appeals in a divided opinion affirmed the lower court's decision.

To set aside a judgment on the grounds of excusable neglect under Rule 60(b), the moving party must show that the judgment rendered against him was due to his excusable neglect and that he has a meritorious defense. *Cayton v. Clark*, 212 N.C. 374, 193 S.E. 404 (1937); *Wynnewood Corp. v. Soderquist*, 27 N.C. App. 611, 219 S.E. 2d 787 (1975); *Bank v. Finance Company*, 25 N.C. App. 211, 212 S.E. 2d 552 (1975). Defendant asserts on appeal before this Court that the doctrine of collateral estoppel is applicable to the plaintiff's claim and constitutes a meritorious defense to this breach of contract action. Plaintiff, in whose favor we granted a writ of certiorari on 28 January 1986, seeks reversal of that portion of the Court of Appeals' opinion which affirmed the trial court's finding of excusable neglect. We will address plaintiff's contention first.

I.

[1] Plaintiff contends that the trial court erred in finding that defendant's failure to respond to the complaint in this action was the result of excusable neglect. This Court finds no merit in plaintiff's argument.

Rule 60(b) of the North Carolina Rules of Civil Procedure provides that:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1) Mistake, inadvertence, surprise, or excusable neglect . . . .

N.C.R. Civ. P. 60(b). Although a motion for relief under Rule 60(b) is addressed to the sound discretion of the trial court and will not be disturbed unless the trial court has abused its discretion, *Sink v. Easter*, 288 N.C. 183, 198, 217 S.E. 2d 532, 541 (1975), whether excusable neglect has been shown is a question of law — not of fact. *Land Co. v. Wooten*, 177 N.C. 248, 98 S.E. 706 (1919); *Equipment, Inc. v. Lipscomb*, 15 N.C. App. 120, 189 S.E. 2d 498 (1972). Based on the facts found by the trial court, an appellate court must determine, as a matter of law, whether defendant's actions constitute excusable neglect.

While there is no clear dividing line as to what falls within the confines of excusable neglect as grounds for the setting aside of a judgment, what constitutes excusable neglect depends upon what, under all the surrounding circumstances, may be reasonably expected of a party in paying proper attention to his case. *Dishman v. Dishman*, 37 N.C. App. 543, 246 S.E. 2d 819 (1978). Excusable neglect must have occurred at or before entry of judgment and must be the cause of the default judgment being entered. *Norton v. Sawyer*, 30 N.C. App. 420, 227 S.E. 2d 148, *cert. denied*, 291 N.C. 176, 229 S.E. 2d 689 (1976).

A close examination of the facts herein discloses that defendant's actions were reasonable under the surrounding circumstances. Defendant did not respond to the complaint upon the assurance by her husband that the matter had been resolved by payment of the judgment in the first action and that there was no necessity to respond. Defendant was aware that the prior action against her husband was based upon the very auction contract on which she was being sued and that her husband paid $7,964.29 to satisfy the judgment entered against him in that action. Defendant was also aware that this payment by her husband was not made until three days after the filing of the complaint in the second action and three days prior to service upon her of the summons. Under these circumstances, it seems quite reasonable for defendant to have concluded that in suing her, plaintiff was only

trying to get payment of the judgment in the first action, that payment of this judgment by her husband resolved all controversy, and that there was no need to respond to the complaint.

Defendant cites *Trucks, Inc. v. Greene*, 34 N.C. App. 279, 237 S.E. 2d 862 (1977), and *Gregg v. Steele*, 24 N.C. App. 310, 210 S.E. 2d 434 (1974), as authority in support of the trial court's finding of excusable neglect. Both cases rely upon an opinion of this Court, *Abernathy v. Nichols*, 249 N.C. 70, 105 S.E. 2d 211 (1958), in which it is said that:

> [T]his Court has held that under G.S. 1-220 [since repealed; now N.C.G.S. § 1A-1, Rule 60(b)(1)] a wife's failure or neglect to file answer in a suit against her and her husband, upon assurances by her husband that he will be responsible for and assume the defense of the action, is excusable neglect.

*Abernathy*, 249 N.C. at 72, 105 S.E. 2d at 213.

Plaintiff contends that there is a difference between a husband's assurance to his wife that he will take care of the matter and take action and a husband's assurance to his wife that he has already taken care of the matter so that no action need be taken. However, this Court agrees with the unanimous panel of the Court of Appeals which declined to make such a fine distinction. Instead, we hold that the principle above stated is applicable to the present case.

Plaintiff further contends that to hold that Mrs. Hall's actions constitute excusable neglect is to hold as a general proposition that if a defendant wife seeks the legal advice of her husband and the legal advice proves to be erroneous, the wife can raise the erroneous legal advice given to her by her husband as excusable neglect on her part. Our decision should not be so broadly construed. Instead, we narrowly interpret the trial court's ruling, upheld by the Court of Appeals, to mean that under the circumstances surrounding this case it was not unreasonable for Mrs. Hall to rely on her husband's assurance that the matter had been taken care of and thus that her actions constitute excusable neglect.

## II.

Turning now to defendant's appeal, we must next determine whether the trial court erred in concluding that defendant does

not have a meritorious defense. Defendant contends that plaintiff should not be permitted to recover in a second action interest from the date of breach which was denied to it in a previous action. As a legal basis for her contention, defendant rests her argument on the principles of collateral estoppel.

The companion doctrines of *res judicata* and collateral estoppel have been developed by the courts of our legal system during their march down the corridors of time to serve the present-day dual purpose of protecting litigants from the burden of relitigating previously decided matters and of promoting judicial economy by preventing needless litigation. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 58 L.Ed. 2d 552, 559 (1979). The "classic" American case, 1B Moore's Federal Practice § 0.441[1] at 718-19 (2d ed. 1984), defining these two doctrines and illustrating the differences between them is the United States Supreme Court's decision in *Cromwell v. County of Sac*, 94 U.S. 351, 24 L.Ed. 195 (1877). Justice Field, writing for the Court, described the two as follows:

> In considering the operation of [a prior] judgment it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose . . . .

> But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be

as to the point or question actually litigated and determined in the original action; not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action.

*Id.* at 352-53, 24 L.Ed. at 197-98. Although the names used by courts when referring to Justice Fields' two "effects" have varied over time, the term *"res judicata"* is frequently applied to the former and the term "collateral estoppel," to the latter. *See* 1B Moore's Federal Practice § 0.405[1] at 180 (2d ed. 1984); J. Friedenthal, M. Kane & A. Miller, *Civil Procedure* 606-09 (1985).[1] We shall use these terms in this sense in this opinion.

Thus, under *res judicata* as traditionally applied, a final judgment on the merits in a prior action will prevent a second suit based on the same cause of action between the same parties or those in privity with them. When the plaintiff prevails, his cause of action is said to have "merged" with the judgment; where defendant prevails, the judgment "bars" the plaintiff from further litigation. In either situation, all matters, either fact or law, that were or should have been adjudicated in the prior action are deemed concluded. *See* Restatement (Second) of Judgments § 18, 19 (1982); 1B Moore's Federal Practice § 405[1] at 181-85 (2d ed. 1984). Under collateral estoppel as traditionally applied, a final judgment on the merits prevents relitigation of issues actually litigated and necessary to the outcome of the prior action in a later suit involving a different cause of action between the parties or their privies. *See* Restatement (Second) of Judgments § 27

---

1. While scholars believe that the two doctrines have different origins, they are regarded as now related. *See, e.g.,* Millar, *The Historical Relation of Estoppel by Record to Res Judicata,* 35 Ill. L. Rev. 41 (1940). We note that some courts, including our own, have accordingly used the term "res judicata," in the broad sense of the preclusive effects of former adjudication, to refer to either. *See* 1B Moore's Federal Practice § 0.405[1] at 178-79 (2d ed. 1984); *see, e.g., Gaither Corp. v. Skinner,* 241 N.C. 532, 85 S.E. 2d 909 (1955). The United States Supreme Court uses the terms *"res judicata"* and "collateral estoppel" in the manner described in the text above. *See Allen v. McCurry,* 449 U.S. 90, 94, 66 L.Ed. 2d 308, 313 (1980). We note that the Restatement (Second) of Judgments, however, has preferred to substitute the terms "claim preclusion" (rather than *res judicata*) and "issue preclusion" (rather than collateral estoppel) because of changes that have taken place in the Rules of Civil Procedure. Restatement (Second) of Judgments at 5-11 (1982).

(1982);[2] 1B Moore's Federal Practice § 0.441[1] at 718 (2d ed. 1984). Traditionally, courts limited the application of both doctrines to parties or those in privity with them by requiring so-called "mutuality of estoppel": both parties had to be bound by the prior judgment. *See Bernhard v. Bank of America,* 19 Cal. 2d 807, 122 P. 2d 892 (1942).

[2] North Carolina currently recognizes both doctrines in their traditional guise. *See King v. Grindstaff,* 284 N.C. 348, 200 S.E. 2d 799 (1973). Therefore, for *res judicata* to apply, Mrs. Hall would need to show that the previous suit resulted in a final judgment on the merits, that the same cause of action is involved, and that both she and McInnis were either parties or stand in privity with parties. However, because in this State contracts joint in form are several in legal effect, the same cause of action is not involved. *See Rufty v. Claywell,* 93 N.C. 306 (1885); N.C.G.S. § 1-72 (1983). Accordingly, *res judicata* cannot apply in the present action.

For Mrs. Hall to assert a plea of collateral estoppel under North Carolina law as traditionally applied, she would need to show that the earlier suit resulted in a final judgment on the merits, that the issue in question was identical to an issue actually litigated and necessary to the judgment, and that both she and McInnis were either parties to the earlier suit or were in privity with parties. *See King v. Grindstaff,* 284 N.C. 348, 200 S.E. 2d 799. Defendant argues that she meets all of these requirements; plaintiff contests defendant's claim only as to the last requirement. We find that Mrs. Hall meets every requirement but the last.

First, the prior suit resulted in a judgment on the merits.

Second, identical issues are involved. In its suit against Mr. Hall, plaintiff sought and failed to obtain interest on its commission from the date of sale. In the instant suit, plaintiff seeks again

---

2. The Restatement employs the following wording:

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

Restatement (Second) of Judgments § 27 (1982).

to recover interest on its commission (the same commission) from the date of sale.

Third, the issue was actually litigated. Plaintiff initially requested interest from the date of sale in its pleading. The issue was later raised before the trial judge; plaintiff specifically requested an award of interest from the date of sale. Plaintiff argued before the judge that it was entitled to this interest as a matter of law.

[3]  Fourth, the issue was actually determined. The trial court in the instant case found as a fact that:

> i. No issue was submitted to the jury, and nor was any such issue requested, and nor was the jury charged concerning interest on the McInnis and Hall contract and *the Presiding Judge declined to grant interest from the day of breach of the contract as a matter of law*, he expressing the opinion that the question of interest on the breach of contract was a jury question and had consequently been waived in the absence of a timely request that an issue concerning interest be submitted to the jury; McInnis contended that interest was payable from the day of breach as a matter of law.

(Emphasis added.) Essentially, then, after the jury rendered its verdict, McInnis requested an award of interest from the date of sale. In making this request, McInnis claimed to be entitled to interest from that date as a matter of law. The trial judge, however, "declined to grant interest from the day of breach of the contract as a matter of law." The judge thereby made a determination that McInnis was not entitled to interest from the date of sale (the date of the breach) as a matter of law. His basis for making this determination was his opinion that prejudgment interest is a question of fact and had therefore been waived, but his determination, made in response to McInnis' claim, was that McInnis was not entitled to the requested interest as a matter of law.·

Lastly, this determination was necessary to the resulting judgment. The trial court in the instant case also found as a fact that:

     h. *Judgment was entered by the Judge Presiding* in favor of McInnis and against Hall for the $7,800.00, *with interest to run thereon from the day of Judgment.*

(Emphasis added.) McInnis raised and argued the issue of interest on the jury's award from the date of sale in the prior action, but the judge awarded interest only from the date of judgment.

**[4]** In fact, the judge in the earlier action erred. Where the amount of damages for a breach of contract is ascertainable from the contract itself, the prevailing party is entitled as a matter of law to interest from the date of the breach. *See Investment Properties v. Allen*, 281 N.C. 174, 188 S.E. 2d 441 (1972), *rev'd on other grounds*, 283 N.C. 277, 196 S.E. 2d 262 (1973); *Thomas v. Realty Co.*, 195 N.C. 591, 143 S.E. 144 (1928); *see also T. C. Allen Construction Co. v. Stratford Corp.*, 384 F. 2d 653 (4th Cir. 1967) (applying North Carolina law). *Cf. Noland Co. v. Poovey*, 54 N.C. App. 695, 282 S.E. 2d 813 (1981), *cert. denied*, 304 N.C. 728, 288 S.E. 2d 808 (1982).[3] The jury verdict in the prior action confirmed the existence of the auction contract, established that it was breached by Mr. Hall, and awarded McInnis the commission fixed by the contract. Once these facts were established, McInnis' entitlement to interest from the date of sale was a question of law properly within the province of the trial judge, not a question of fact for the jury, and the auctioneering company did not waive this question by failing to request a jury instruction on the issue.

**[5]** Nevertheless, the fact that a prior judgment was based on an erroneous determination of law or fact does not as a general rule prevent its use for purposes of collateral estoppel. As this Court held several years ago in *King v. Grindstaff*, 284 N.C. 348, 360, 200 S.E. 2d 799, 808,

> To be valid a judgment need not be free from error. Normally no matter how erroneous a final valid judgment may be on either the facts or the law, it has binding *res judicata* and collateral estoppel effect in all courts, Federal and State . . . .

---

3. Interest is awarded for a breach of contract pursuant to N.C.G.S. § 24-5. That portion of the statute that applied to this case has since been slightly reworded. The cases cited herein were decided under the wording that existed at the time of the decision in the instant case.

Because the trial judge did make a determination that McInnis was not entitled to interest from the date of sale as a matter of law, and because that determination was necessary to support the award actually made, McInnis may be bound by this determination despite the fact that it was erroneous. The normal method for obtaining relief from judgments flawed by error of law is through appeal to our appellate courts. Plaintiff McInnis had the opportunity to have the trial judge's erroneous determination corrected in this manner. It failed to do so. Therefore, it may properly be bound by the earlier judge's determination that it was not entitled to prejudgment interest on this particular commission.

[6] However, the final traditional requirement of mutuality of estoppel is unsatisfied. Although McInnis was a party to the earlier action, our Court of Appeals has correctly ruled that Mrs. Hall was not in privity with her husband, the other party in that action. Under North Carolina law as heretofore applied, collateral estoppel would not be available to her for failure to meet the mutuality requirement.

The modern trend in both federal and state courts is to abandon the requirement of mutuality for collateral estoppel,[4] subject to certain exceptions, as long as the party to be collaterally estopped had a full and fair opportunity to litigate the issue in the earlier action. 1B *Moore's Federal Practice* § 0.441[3.2] at 731-36 (2d ed. 1984 and Supp. 1985-86); *see also Blonder-Tongue Laboratories v. University of Illinois Foundation*, 402 U.S. 313, 28 L.Ed. 2d 788 (1971) (discussion) and Restatement (Second) of Judgments § 29 (1982 and Supp. 1985-86). The requirement of mutuality has long been under attack. In the 1800's, Jeremy Bentham denounced it as " 'a maxim which one would suppose to have found its way from the gaming-table to the bench,' " *Zdanok v. Glidden Co.*, 327 F. 2d 944, 954 (2d Cir.), *cert. denied*, 377 U.S. 934, 12 L.Ed. 2d 298 (1964) (quoting Bentham, Rationale of Judicial

---

4. There seems to be no parallel move to abandon the traditional requirement of mutuality for *res judicata*. Abandoning mutuality for *res judicata* as defined herein would accomplish little in a practical sense. Because a plaintiff is generally regarded as having a separate cause of action against each obligor even when the subject matter of the claims is identical, the requirement of identity of cause of action would render *res judicata* unavailable to one not a party or privy in any case. *See* 1B Moore's Federal Practice § 0.412 at 503 (2d ed. 1984); Semmel, *Collateral Estoppel, Mutuality and Joinder of Parties*, 68 Colum. L. Rev. 1457, 1458 (1968); Cleary, *Developments in the Law*, 65 Harv. L. Rev. 818, 861-62 (1952).

Evidence, in 7 Works of Jeremy Bentham 171 (J. Bowing ed. 1843)) (meaning that the maxim displays an attitude of "lose against one, play again against another"). After a series of judicial erosions, it was finally first abandoned, at least for "defensive" uses of collateral estoppel, in the landmark case of *Bernhard v. Bank of America*, 19 Cal. 2d 807, 122 P. 2d 892 (1942).

Other states followed *Bernhard*'s lead until in 1967 the New York Court of Appeals felt itself able to say, "[T]he 'doctrine of mutuality' is a dead letter." *B. R. DeWitt, Inc. v. Hale*, 19 N.Y. 2d 141, 147, 225 N.E. 2d 195, 198, 278 N.Y.S. 2d 596, 601 (1967). In 1971, the United States Supreme Court joined the trend and held in *Blonder-Tongue Laboratories v. University of Illinois Foundation*, 402 U.S. 313, 28 L.E. 2d 788, that mutuality would no longer be required for defensive uses of collateral estoppel in Federal courts. Later, in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 58 L.E. 2d 552, the Court extended its earlier holding to permit carefully controlled "nonmutual offensive" use as well. *But see United States v. Mendoza*, 464 U.S. 154, 78 L.Ed. 2d 379 (1984) (where the Court refused to allow nonmutual offensive collateral estoppel against the Federal Government). Commentators appear to be in agreement that most jurisdictions have abandoned the mutuality requirement at least in part. *See* Restatement (Second) of Judgments § 29, Reporter's Note (1982 and Supp. 1985-86); Flanagan, *Offensive Collateral Estoppel: Inefficiency and Foolish Consistency*, 1982 Ariz. St. L.J. 45; Schroeder, *Relitigation of Common Issues: The Failure of Nonparty Preclusion and an Alternative Proposal*, 67 Iowa L. Rev. 917 (1982); Callen & Kadue, *To Bury Mutuality, Not to Praise It: An Analysis of Collateral Estoppel After Parklane Hosiery Co. v. Shore*, 31 Hastings L.J. 755 (1980); Note, *Collateral Estoppel Without Mutuality: Accepting the Bernhard Doctrine*, 35 Vand. L. Rev. 1423 (1982).

The basic rationale behind this abandonment was succinctly expressed by Traynor, J., writing for the Supreme Court of California in *Bernhard*. Judge Traynor first noted that the criteria for determining who might assert a plea of collateral estoppel differed fundamentally from the criteria for determining against whom the plea might be asserted. The requirements of due process forbade the assertion of a plea of collateral estoppel against a litigant unless he was a party or in privity with a party to the earlier suit, but no comparable reason existed for requiring

that the litigant asserting the plea be bound by the former adjudication. *Bernhard*, 19 Cal. 2d at 811-13, 122 P. 2d at 894-95. Traynor therefore concluded that there was no satisfactory rationalization for permitting "one who has had his day in court to reopen identical issues by merely switching adversaries." *Bernhard*, 19 Cal. 2d at 813, 122 P. 2d at 895. More recently, the United States Supreme Court in *Blonder-Tongue* explained, "the question is whether it is any longer tenable to afford a litigant more than one full and fair opportunity for judicial resolution of the same issues." *Blonder-Tongue*, 402 U.S. at 328, 28 L.Ed. 2d at 799. *See also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 58 L.Ed. 2d 552.

We are presented in the instant case with a proposed defensive use of the doctrine of collateral estoppel, and we see no good reason for continuing to require mutuality of estoppel in cases like this case. Plaintiff McInnis has already had its day in court on the issue it now seeks to relitigate against Mrs. Hall. Plaintiff seeks now to augment the award rendered by the prior court. The issue here is identical to the one decided in the prior case. Both actions are based on the same breach of contract, under which Mrs. Hall's obligations were exactly the same as her husband's. On the record before this Court, plaintiff clearly had a full and fair opportunity to litigate this issue in the first action. Plaintiff did not appeal the adverse determination and the judgment became final.

We have said before that collateral estoppel "is designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally." *King v. Grindstaff*, 284 N.C. 348, 356, 200 S.E. 2d 799, 805. *See also Crossland-Cullen Co. v. Crossland*, 249 N.C. 167, 170, 105 S.E. 2d 655, 657 (1958) ("It is elementary and fundamental that every person is entitled to his day in court to assert his own rights or to defend against their infringement . . . . But public policy is equally as adamant in its demand for an end to litigation when complainant has exercised his right . . . ."). We believe that, at least in cases like the instant case, the better view is to allow defendants like Mrs. Hall to assert collateral estoppel as a defense against a party who has previously had a full and fair opportunity to litigate a matter and now seeks to reopen the identical issues with a new adversary. Allowing a defensive use of

collateral estoppel in such cases will relieve parties from the cost and vexation of multiple lawsuits, encourage joinder, promote judicial economy, and, as the United States Supreme Court has said, "by preventing inconsistent decisions, encourage reliance on adjudication," *Allen v. McCurry*, 449 U.S. 90, 94, 66 L.Ed. 2d 308, 313 (1980).

Although defendant argued before this Court that she was in privity with her husband, she concluded her argument by requesting in essence that this Court adopt an expansive application of collateral estoppel. She said,

> It would be unjust and a waste of courts' time to permit one who has had its day in court (McInnis) to reopen identical issues by merely switching adversaries. Under the doctrine of collateral estoppel, the plaintiff should be unable to augment an award which was rendered by a prior court in a case in which it was a party by institution of a second action on the very question decided by the prior court. The doctrine of collateral estoppel was intended with this very result in mind, and inapplicability of this doctrine to circumstances such as the ones presently before us considerably limits this doctrine.

[7] We therefore hold that defendant may assert the prior judgment as a defense to the present action and that, in this case, collateral estoppel constitutes a meritorious defense. That portion of the decision of the Court of Appeals which affirmed the trial court's denial of defendant's motion to set aside the default judgment for lack of a meritorious defense is reversed and the cause remanded to the Court of Appeals for further remand to the District Court, Richmond County, for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part, and remanded.

Justices PARKER and BROWNING did not participate in the consideration or decision of this case.

Chief Justice BILLINGS concurring in result.

I am unable to join in the majority opinion because, regardless of whether the time has come to abandon mutuality in the

defensive use of the doctrine of collateral estoppel, an abandonment that was not requested by the defendant and a question that was briefed by neither party, the doctrine of collateral estoppel does not prevent litigation of the issue of the plaintiff's entitlement under its contract to prejudgment interest because that issue was not "determined" in the earlier action. Nevertheless, the result reached by the majority is supported by the application of another doctrine specifically applicable to joint and several obligations, such as the one involved in this litigation, and I therefore concur in the result.

In regard to their obligations to the plaintiff under the auction contract, Mr. and Mrs. Hall were jointly and severally liable. N.C.G.S. § 1-72 (1983) permits suit "against all or any number" of persons obligated on a joint contract; therefore, the plaintiff herein was not required to join Mrs. Hall in its counterclaim against Mr. Hall in the prior lawsuit. Because persons who are jointly and severally liable on a contract are not in privity, as the majority correctly concludes, the judgment against Mr. Hall did not operate as *res judicata* as to the plaintiff's claim against Mrs. Hall.

*Res judicata* and *collateral estoppel* are two similar doctrines with significantly different application. *Res judicata* is called a doctrine of "claim preclusion" because it prevents relitigation of a claim or cause of action between the same parties or those in privity with the parties. *King v. Grindstaff*, 284 N.C. 348, 200 S.E. 2d 799 (1973). It precludes not only the issues actually determined but all issues which could or should have been raised in support or defense of the claim litigated. Unquestionably, *res judicata* would prevent the plaintiff from seeking in a second lawsuit to recover prejudgment interest from Mr. Hall.

*Collateral estoppel,* on the other hand, works to preclude relitigation by parties or their privies of facts or issues *actually determined* in a previous action based upon a different claim or cause of action. *Id.*

In determining whether collateral estoppel is applicable to specific issues, certain requirements must be met: (1) The issues to be concluded must be the same as those involved in the prior action; (2) in the prior action, the issues must have been raised and actually litigated; (3) the issues must have

been material and relevant to the disposition of the prior action; and (4) the determination made of those issues in the prior action must have been necessary and essential to the resulting judgment.

*Id.* at 358, 200 S.E. 2d at 806.

Here the claims in the two actions are different because, although they are based upon one contract, the first was a claim to establish Mr. Hall's liability under that contract; the action *sub judice* is a claim to establish Mrs. Hall's liability, which is joint and several with but independent of Mr. Hall's liability.

Historically in North Carolina, our courts have applied the doctrine of mutuality to both *res judicata* and collateral estoppel. Under the doctrine of mutuality, if the prior action did not bind one of the parties to the second action because he or she had not been a party or in privity with a party to the first action, the other party also was not bound, even though he or she had been a party to the earlier action. *Kayler v. Gallimore*, 269 N.C. 405, 152 S.E. 2d 518 (1967). Because Mrs. Hall was not a party to the earlier action and was not in privity with a party, she in no way was bound by any issues determined therein. If the judgment in the prior action had not been satisfied by Mr. Hall, there is no question that the plaintiff herein could have prosecuted this action against Mrs. Hall and that she was not bound by the determination in the prior action that the debt was owed or the amount of the outstanding balance due on the debt. She also would have been free to interpose any defenses or set-offs that she had to the debt, whether or not they had been raised by Mr. Hall in the counterclaim against him. Because Mrs. Hall was not precluded by any determination in the first action, application of the doctrine of mutuality would mean that the plaintiff, although a party to the first action, would not be precluded in an action against Mrs. Hall by any determination in the first action. By abandoning the doctrine of mutuality in application of the doctrine of collateral estoppel, the majority concludes that the plaintiff is precluded by the prior judgment from seeking to recover prejudgment interest in this action against Mrs. Hall.

The problem with the majority's analysis is not with abandonment of the doctrine of mutuality but with application of collateral estoppel to the issue of the plaintiff's entitlement to

prejudgment interest, because the issue of the entitlement of the plaintiff to recover prejudgment interest on its contract was not actually determined on the merits in the first action.

Among the trial judge's findings of fact, to which no exception was taken, was the following:

> 1.i. No issue was submitted to the jury, and nor was any such issue requested, and nor was the jury charged concerning interest on the McInnis and Hall contract and the Presiding Judge declined to grant interest from the day of breach of the contract as a matter of law, he expressing the opinion that the question of interest on the breach of contract was a jury question and had consequently been waived in the absence of a timely request that an issue concerning interest be submitted to the jury; McInnis contended that interest was payable from the day of breach as a matter of law.

The finding contained in paragraph 1.i. establishes that the trial judge determined that entitlement to prejudgment interest was a jury question, not a question of law. Neither he nor the jury *determined* that McInnis was not entitled under its contract to prejudgment interest; the judge determined that as against Mr. Hall in the action McInnis had waived its right to recover the interest by not requesting that an issue regarding prejudgment interest be submitted to the jury. Waiver is conduct by which a party relinquishes a right, Black's Law Dictionary 1417 (5th Ed. 1979), giving up in the action the right to rely upon the claim or defense which he otherwise could rely upon. Because the waiver applied only to the conduct of the action against Mr. Hall, it was not a determination that McInnis could not recover the interest against other obligors on the contract. The right of McInnis to recover prejudgment interest *under the contract* was not "actually litigated and determined in the original action" although it "might have been thus litigated and determined," *Cromwell v. County of Sac*, 94 U.S. 351, 353, 24 L.Ed. 195, 198 (1877) (majority opinion, 318 N.C. 421, 427-28, 349 S.E. 2d 552, 556), had McInnis not, under the trial judge's view of the law, waived his right to

have it determined.[1] As stated in Restatement (Second) of Judgments § 27 comment e (1982):

> A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action. There are many reasons why a party may choose not to raise an issue, or to contest an assertion, in a particular action. The action may involve so small an amount that litigation of the issue may cost more than the value of the lawsuit. Or the forum may be an inconvenient one in which to produce the necessary evidence or in which to litigate at all. The interests of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the adverse party are less compelling when the issue on which preclusion is sought has not actually been litigated before. And if preclusive effect were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation.

Whether an issue raised in the pleading was actually litigated and determined must be determined by a review of the entire record, *Reid v. Holden,* 242 N.C. 408, 88 S.E. 2d 125 (1955). In this case the trial judge expressly held that the issue of prejudgment interest was waived and therefore not determined. *See Solarana v. Industrial Electronics, Inc.,* 50 Haw. 22, 28, 428 P. 2d 411, 416 (1967) (" 'A judgment is not res judicata as to issues raised in a previous case which were . . . matters which a court expressly refused to determine.' "); *Harvey v. Getchell,* 190 Or. 205, 225 P. 2d 391 (1950). Careful attention to the question of whether the issue raised in the second action was determined in the first action becomes especially necessary when we abandon the doctrine of mutuality in the defensive use of collateral estoppel.

Therefore, because the issue was not actually litigated and determined, collateral estoppel does not bar litigation of McInnis' entitlement to prejudgment interest even if the doctrine of mutuality is abandoned in the circumstances presented here.

---

1. It might be that if Mrs. Hall is entitled to rely on collateral estoppel in the action *sub judice,* McInnis is bound by the trial judge's "determination" that the question of prejudgment interest is a factual, rather than a legal, question.

The trial judge found as fact no. 7 that "[t]he only alleged meritorious defense raised by the defendant in her affidavits or in argument of counsel is that of collateral estoppel." No exception was taken to finding of fact no. 7, nor was any question raised in either the Court of Appeals or in this Court about the possible existence of another meritorious defense.

However, the motion of the defendant to set aside the judgment, the affidavits of Mr. and Mrs. Hall, the findings of the trial judge and the statement of facts in the Court of Appeals' opinion and in this Court's majority opinion all state that prior to entry of the default judgment against Mrs. Hall in the case *sub judice*, McInnis had obtained a judgment against Mr. Hall for breach of the contract which also was the basis for the action against Mrs. Hall and that the judgment had been satisfied.

As this Court noted in *Sherwood v. Collier*, 14 N.C. 380, 381 (1832)[2]:

> A payment by any one of two or more, jointly, or jointly and severally bound for the same debt, is payment by all, and any of the parties may take advantage of it and plead it to an action brought by a satisfied creditor, or in his name by the sureties.

The general rule in this country is that, although *res judicata* does not prevent the prosecution of separate actions and the obtaining of separate judgments against persons jointly and severally liable on the same obligation, the *satisfaction* of a judgment against one such obligor satisfies all debts or judgments based upon the joint and several obligation, even if the judgments are for different amounts. 47 Am. Jur. 2d, *Judgments* § 993 (1969), Restatement (Second) of Judgments § 50; *Leo Jay Rosen Associates, Inc. v. Schultz*, 148 So. 2d 293 (Fla. Dist. Ct. App.) (1963). Therefore, the satisfaction by Mr. Hall of the judgment which McInnis had obtained against him for the joint and several contractual obligation would constitute a defense to an action against Mrs. Hall upon the same obligation.

2. The rule of the *Sherwood* case was not changed by the subsequent enactment of N.C.G.S. § 1-72 which permits action against "all or any number of the persons making [joint contracts]."

If we are going to reach out and decide this case on the basis of legal principles not raised or briefed by the parties, I would prefer to decide it on the basis of the theory which is tailor-made for the situation present and which calls for the application of a long-accepted rule of law rather than to use this case as a vehicle to change the law of mutuality in collateral estoppel without the benefit of briefs or arguments.

Justice MEYER joins in this concurring opinion.