ANN FOREMAN, Plaintiff v. JOHN FREDERIC BENTON FOREMAN, Defendant

No. COA00-524

(Filed 3 July 2001)

**1. Divorce— British spousal support order—enforcement—subject matter jurisdiction**

A North Carolina trial court had subject matter jurisdiction under UIFSA to enforce a British spousal support order. Orders of "another state" may be registered under UIFSA; England has reciprocity with the United States in issues of support and is treated as a "state" for UIFSA purposes. N.C.G.S. § 52C-1-101.

**2. Collateral Estoppel and Res Judicata— dismissal for lack of subject matter jurisdiction—not a judgment on the merits**

The trial court did not err by not dismissing a petition for enforcement of a British spousal support order under res judicata or collateral estoppel where the petition had been filed and dismissed under URESA for lack of subject matter jurisdiction before plaintiff filed this action under UIFSA. A dismissal for lack of subject matter jurisdiction is not on the merits and neither res judicata nor collateral estoppel applies.

**3. Divorce— British spousal support order—amounts accrued before UIFSA—registration date controls**

A North Carolina trial court had jurisdiction under UIFSA to award payments accrued under a British spousal support order prior to the effective date of UIFSA. UIFSA governs orders registered in North Carolina after 1 January 1996 regardless of when

FOREMAN v. FOREMAN

[144 N.C. App. 582 (2001)]

the orders were entered and the order in this case was properly registered on 23 September 1997.

Appeal by defendant from judgment entered 22 February 2000 by Judge Paul G. Gessner in District Court, Wake County. Heard in the Court of Appeals 15 March 2001.

*Attorney General Michael F. Easley, by Assistant Attorney General Gerald K. Robbins, for plaintiff-appellee.*

*Allen and Pinnix, P.A., by M. Jackson Nichols, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

John Frederic Benton Foreman (defendant) appeals from an Order decreeing that the support order entered against him in England was valid and properly registered in North Carolina.

Ann Foreman (plaintiff) and defendant were married in England in 1963. After divorcing in 1990, they entered into a consent order (British support order) on 18 July 1990 whereby it was determined, *inter alia*, that defendant would pay 2,700 British pounds per year to plaintiff as spousal support.

Defendant later moved to North Carolina and plaintiff petitioned for enforcement of the British support order by registering it in Wake County on 6 April 1995 pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA). N.C.G.S. § 52A-29 repealed 1995 N.C. Sess. Laws 538 s. 7(a). The petition was dismissed for lack of subject matter jurisdiction on 28 September 1995. On 17 June 1997, plaintiff again petitioned for enforcement of the British support order, this time pursuant to the Uniform Interstate Family Support Act (UIFSA). N.C.G.S. § 52C (1995).

The trial judge concluded that the trial court had proper subject matter jurisdiction, that the British support order could properly be registered and enforced in Wake County, and that the matter was not barred by *res judicata* or collateral estoppel because the case had not previously been adjudicated on its merits. From these conclusions of law, defendant appeals.

The issues presented by this appeal are whether: (I) subject matter jurisdiction exists under UIFSA for a North Carolina court to enforce a British support order; (II) England has reciprocity with

North Carolina in issues of spousal support; (III) *res judicata* or collateral estoppel bar plaintiff's UIFSA claim because of the prior filing pursuant to URESA; (IV) support orders established prior to the effective date of UIFSA can be enforced.

**[1]** Defendant argues first that there is no subject matter jurisdiction for a North Carolina court to enforce a British support order. We disagree.

UIFSA is the applicable statute that gives authority to the district courts of North Carolina to deal with interstate family support matters. *See* N.C.G.S. § 52C-1-102 (1999). The registration of foreign support orders is a matter over which UIFSA has authority. N.C.G.S. § 52C-1-101. The case at bar deals with the attempted registration of a support order from England, a foreign jurisdiction. Thus, we conclude that the Wake County district court had subject matter jurisdiction to hear the plaintiff's claim that the foreign order should be registered under UIFSA, and to hear the defendant's claim that the order should not be so registered.

Orders of "another state" may be registered under UIFSA. N.C.G.S. § 52C-3-301(b)(3) (1999). Within the "definitions" section of UIFSA, N.C.G.S. § 52C-1-101(19), the following definition is given for the term, "state:"

(19) "State" means a state of the United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States. The term includes:

a. An Indian tribe; and

b. A foreign jurisdiction that has enacted a law or established procedures for issuance and enforcement of support orders which are substantially similar to the procedures under this Act, the Uniform Reciprocal Enforcement of Support Act, or the Revised Uniform Reciprocal Enforcement of Support Act.

The threshold question, then, is whether England is a "foreign jurisdiction that has enacted a law or established procedures for issuance and enforcement of support orders which are substantially similar to the procedures under this Act." *Id.* If so, then North Carolina has statutory authority under UIFSA to register the British order.

**FOREMAN v. FOREMAN**

[144 N.C. App. 582 (2001)]

We acknowledge that "there is very little precedent for how a trial court should make the determination of what constitutes 'substantially similar law or procedures.' " *Country of Luxembourg v. Canderas*, 338 N.J.Super. 192, 197, 768 A.2d 283, 286 (2000) (citing *Selected Topics in International Law for the Family Practitioner: International Child Support-1999*, 32 Fam. L.Q. 525, 550 (1998)). In fact, "UIFSA does not specify who is responsible for determining whether a foreign country is entitled to reciprocity." John Saxon, *International Establishment and Enforcement of Family Support*, 10 Family Law Bulletin at 10, footnote 5 (August 1999). Saxon notes that the "child support enforcement (IV-D) agency in each state should maintain a current list of foreign countries that are considered to be reciprocating foreign countries under UIFSA." *Id* at 10, footnote 6. In his article, he asserts that "[r]eciprocity currently exists under UIFSA between all American states and the following foreign jurisdictions: Australia, Austria, Bermuda . . . United Kingdom (England, Wales, Scotland, Northern Ireland)." *Id.* at 2.

Plaintiff's application for support is based on the New York Convention on the Recovery Abroad of Maintenance (the treaty). 268 U.N.T.S. 3. The treaty "was promulgated by the United Nations . . . [and] is comparable to URESA." Arnold H. Rutkin, Family Law and Practice § 48.11(4) (5 vol. 2001). Although the United States is not a signatory nation to the treaty, we find reciprocity between England and North Carolina based on a 1972 British Act (the Act). *Maintenance Orders (Reciprocal Enforcement) Act*, 1972, ch. 18 (Eng.). The Act has two parts, either of which justify our finding of reciprocity. Under part one of the Act, reciprocity is established between England and any country that is not a party to the treaty if that country is specified in a statutory instrument executed pursuant to section 1 or section 40 of the Act. *Id.* A 1995 British statutory instrument states that England "is satisfied that arrangements have been made in the States of the United States of America . . . to ensure that maintenance orders made by courts in the United States can be enforced there . . . [and] that in the interest of reciprocity it is desirable to ensure that maintenance orders made by courts in those States can be enforced in the United Kingdom." *Reciprocal Enforcement of Maintenance (United States of America) Order*, S.I. 1995, No. 2709. This statutory instrument applies part one of the Act to "maintenance orders made by courts in the United Kingdom and to maintenance orders made by courts in a specified State," including North Carolina, pursuant to section 40 of the Act. *Id.* Under part two of the Act, reciprocity is established between England and any coun-

IN THE COURT OF APPEALS

FOREMAN v. FOREMAN

[144 N.C. App. 582 (2001)]

try that is not a party to the treaty if that country is specified in a statutory instrument executed pursuant to section 25 or section 40 of the 1972 Act. A 1993 British statutory instrument expressly applies part two of the 1972 Act to North Carolina. *Recovery of Maintenance (United States of America) Order,* S.I. 1993, No. 591. We hold that England, then, has reciprocity with North Carolina in issues of support. *Id.* As such, England is treated as a "State" for purposes of the application of UIFSA. *Id.*

This Court recently spoke in a similar case involving the nation of Switzerland. *Haker-Volkening v. Haker,* 143 N.C. App. 688, 547 S.E.2d 127 (2001). The rule announced by the Court in *Haker-Volkening* requires a determination by the trial court of whether the foreign jurisdiction has "enacted a *law* for the issuance and enforcement of support orders that is 'substantially similar to the procedures under [UIFSA or URESA].'" *Id.* at 694, 547 S.E.2d at 131. The Court held that the burden was on the petitioner to produce "evidence in the record documenting" that such a law exists. *Id.* This rule is appropriate where, as in *Haker-Volkening,* the foreign jurisdiction is not given reciprocal status by law, treaty or international agreement. Where, as in the case at bar, however, the foreign jurisdiction is given reciprocal status, such requirement is not necessary.

**[2]** Defendant next assigns error to the trial court's failure to dismiss the case on a theory of *res judicata. Res judicata,* or claim preclusion, is the theory whereby whenever a final judgment is rendered in a court of law, the claim that was settled may not be relitigated by the same parties or by parties in privity with the same parties. *Thomas M. McInnis & Assoc., Inc. v. Hall,* 318 N.C. 421, 349 S.E.2d 552 (1986). "A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court." *Veazey v. Durham,* 231 N.C. 357, 361-62, 57 S.E.2d 377, 381 (1950); *see Russ v. Woodard,* 232 N.C. 36, 41, 59 S.E.2d 351, 355 (1950) (final judgment "decides the case upon its merits, without any reservation for other and further directions of the court"). While this case involved the same cause of action and the same parties as a previous case (the initial 1995 Wake County petition), there had not been a final judgment in that previous case. There was a dismissal based on a lack of subject matter jurisdiction, which is not on the merits and thus is not given res judicata effect. *Cline v. Teich,* 92 N.C. App. 257, 264, 374 S.E.2d 462, 466 (1988). Accordingly, the plaintiff was not precluded from bringing her claim before the court again; *res judicata* should not apply.

Defendant also argues that the case should have been dismissed based on the theory of collateral estoppel or issue preclusion.

[In order] to assert a plea of collateral estoppel under North Carolina law as traditionally applied, [defendant] would need to show that the earlier suit resulted in a final judgment on the merits, that the issue in question was identical to an issue actually litigated and necessary to the judgment, and that both [parties] were either parties to the earlier suit or were in privity with parties.

*McInnis* at 429, 349 S.E.2d at 557.

*Res judicata* is distinct from collateral estoppel in that the former focuses on specific claims while the latter focuses on specific issues. "Thus, while *res judicata* precludes a subsequent action between the same parties or their privies based on the same *claim,* collateral estoppel precludes the subsequent adjudication of a previously determined *issue,* even if the subsequent action is premised upon a different claim." *Hales v. N.C. Insurance Guaranty Assn.,* 337 N.C. 329, 333, 445 S.E.2d 590, 594 (1994) (emphasis in original). For our purposes today, however, the differences are unimportant as the threshold question under both theories is whether there was a final judgment on the merits. If there was a final judgment on the merits, then either theory might apply, depending on the other facts. If there was not a final judgment on the merits, then neither theory should apply regardless of the other facts. Again, in the case *sub judice,* the original action was dismissed for a lack of subject matter jurisdiction. Therefore, there was never a judgment on the merits and the same parties should not be precluded from raising the same issue. *See, e.g., Cline,* 92 N.C. App. at 264, 374 S.E.2d at 466. The trial court therefore did not err in failing to dismiss because of collateral estoppel.

[3] Defendant next argues that the trial court had no jurisdiction to award payments established prior to the date UIFSA came into effect. Defendant asserts that UIFSA governs foreign support orders registered in North Carolina only after 1 January 1996. Defendant argues that, because § 52C is effective only for orders registered as of 1 January 1996, the trial court lacked the authority to require plaintiff's payments accruing from June 1994 until January 1996. This argument also fails.

It is true that UIFSA did not come into effect until 1 January 1996 when it replaced URESA, the previously applicable statute. UIFSA,

**FOREMAN v. FOREMAN**

[144 N.C. App. 582 (2001)]

however, governs orders, regardless of when entered, so long as the orders were registered in North Carolina after 1 January 1996.

Indeed, this Court has addressed this issue before when we wrote:

> [I]t is important that we address the applicability of UIFSA to an order issued prior to the effective date of the Act. We now hold that UIFSA governs the proceedings over any foreign support order which is registered in North Carolina after 1 January 1996, UIFSA's effective date. . . . [O]ur interpretation saves the courts from the arduous task of attempting to determine arrearage based on the application of two different sets of law to the same order. Other states addressing this issue have also applied the effective date of their own UIFSA laws in a similar way. *See Child Support Enforcement v. Brenckle,* 675 N.E.2d 390 (Mass. 1997) (applying UIFSA retroactively); *Cowan v. Moreno,* 903 S.W.2d 119 (Tex Ct. App. 1995) (applying UIFSA to a 1982 foreign support order where UIFSA became effective in 1993).

*Welsher v. Rager,* 127 N.C. App. 521, 527, 491 S.E.2d 661, 664-65 (1997).

In the present case, the British support order was properly registered in Wake County on 23 September 1997. Registration having taken place after 1 January 1996, we conclude that the trial court properly registered and enforced payments for claims prior to 1 January 1996. Defendant's argument therefore fails.

Having found no error in the issues raised on appeal, the judgment of the trial court is affirmed.

Affirmed.

Judges MARTIN and TYSON concur.