***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument of the parties. The appealing party has not shown good ground to receive further evidence or rehear the parties or their representatives. Following its review, the Full Commission affirms the Opinion and Award of the Deputy Commissioner, with minor modifications.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 37 years old. Plaintiff has a high school diploma and received a certificate from technical school. *Page 2 
2. Plaintiff was hired by Defendant in April 2008 to work as a Rehabilitation Technician at a group home. Plaintiff's job duties included transporting patients, cleaning, and helping troubled patients set goals and progress toward these goals.
3. Plaintiff's direct supervisor was Israel Ojimadu, the owner of Defendant. Mr. Ojimadu was also the individual who paid Plaintiff. Defendant had more than three employees. Plaintiff testified that Defendant employed approximately 60 employees at the time of his injury.
4. On December 13, 2008, Plaintiff suffered an injury by accident during the course and scope of his employment with Defendant. Plaintiff was walking out of the back door of the house to take out the trash when he slipped on the porch steps and fell, injuring his head, spine, and right side. Plaintiff was able to stand after this fall. Subsequently, Plaintiff fell again when he climbed the stairs to care for another patient. Plaintiff lost consciousness after the second fall.
5. At the time of the injury, Plaintiff had an average weekly wage of $420.00, yielding a compensation rate of $280.00.
6. Plaintiff notified his supervisor, Israel Ojimadu, of the accident and was never told that Defendant had no workers' compensation insurance.
7. Defendant, according to Employment Security Commission records, failed to maintain workers' compensation insurance while subject to the Act for 261 days, including Plaintiff's date of injury.
8. Plaintiff initially treated at WakeMed Hospital Emergency Room on the day of the injury, where he underwent a chest x-ray, CT scan of head, CT scan of the back, and an x-ray of the lumbar spine. Plaintiff reported pain in his neck and lower back. Plaintiff was diagnosed with a hematoma on his head, a closed-head injury, a concussion, and a back contusion. He was instructed not to return to work until cleared by a physician upon follow-up. *Page 3 
9. Plaintiff presented to the Duke Raleigh Hospital Emergency Department on January 19, 2009, with complaints of pain and spasm of the neck, headaches, and back pain. He was examined by Dr. Robert Kratz, who ordered several radiological studies. Plaintiff underwent a cervical spine CT scan that revealed spondylosis with multilevel degenerative disc disease, disc osteophyte complexes, and multilevel facet arthrosis. The central canal was narrowed by degenerative changes at the C3-4 level and at the C4-5 level. The reviewing radiologist recommended a cervical MRI for further evaluation. Dr. Kratz diagnosed neck and back pain with possible seizures and recommended an evaluation with an orthopedist and neurologist. Plaintiff was instructed not to drive until evaluated by a neurologist.
10. Dr. Cary Idler of Orthopaedic Specialists of North Carolina evaluated Plaintiff on January 30, 2009. Plaintiff reported that he was not working at that time due to his back pain. Dr. Idler also recommended a cervical MRI.
11. At the hearing before the Deputy Commissioner, Plaintiff testified that he was still experiencing symptoms, including blurred vision, back pain, neck pain, numbness in his fingers, and pain running down his legs. He testified that he returned to work at Western Express on June 6, 2009, in order to support his family and not lose his home. At that time, Plaintiff had only worked four or five days for Western Express and had not received a paycheck. He expected that he would earn less there than he did prior to his injury, but was unsure how much because he was to be paid by the mile.
12. Plaintiff has not received any indemnity or medical compensation from Defendant.
13. Plaintiff had no health insurance at the time of his injury. Plaintiff continues to have unpaid medical bills. Plaintiff has been unable to afford the recommended MRI and *Page 4 
neurological evaluation. At the time of the hearing before the Deputy Commissioner, Plaintiff's unpaid medical bills related to the December 13, 2008 injury totaled approximately $15,897.69.
14. The Full Commission finds that Plaintiff was unable to work due to his December 13, 2008 injuries from that date until his return to work on June 6, 2009. Thereafter, Plaintiff was able to work, though for lesser wages than he earned prior to his injury. Plaintiff required the above-described medical treatment for his work injuries and continues to be in need of treatment.
15. Defendant failed to appear at the hearing before the Deputy Commissioner despite proper notice from the Industrial Commission. Defendant did not file a Brief with the Full Commission on appeal, but rather filed a Motion to Set Aside the Opinion and Award and a Motion for a New Hearing. Defendant contends that it retained an attorney who filed a Motion to Continue the hearing before the Deputy Commissioner. Defendant further contends that the attorney did not advise that the Motion to Continue was denied. Therefore, Defendant asserts that the failure to attend was justifiable and should be excused. Defendant requests a new hearing regarding the merits of the case and insurance coverage issues.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The North Carolina Industrial Commission has jurisdiction of this matter. N.C. Gen. Stat. § 97-2, et al.
2. Plaintiff suffered a compensable injury by accident to his head, back, and neck on December 13, 2008. N.C. Gen. Stat. § 97-2(6).
3. On December 13, 2008, Defendant was a duly-qualified Employer and subject to *Page 5 
the North Carolina Workers' Compensation Act, having employed the requisite number of employees to be bound under the provisions of said Act at the time of the incident. N.C. Gen. Stat. § 97-2.
4. As a result of Plaintiff's compensable injury by accident, Plaintiff was temporarily totally disabled until June 6, 2009, the date Plaintiff began working with Western Express. Plaintiff is entitled to temporary total disability compensation from December 13, 2008 through June 6, 2009. N.C. Gen. Stat. § 97-29.
5. On June 6, 2009, Plaintiff returned to work with an expectation that he would earn less than his pre-injury average weekly wage. As a result of Plaintiff's compensable injury by accident, Plaintiff is entitled to temporary partial disability compensation from June 6, 2009 to present and continuing, subject to the 300-week limitation, for any difference between his wages at his new job and his average weekly wage. Plaintiff shall provide to the Full Commission documentation of his wages at Western Express, so that Plaintiff's temporary partial disability compensation may be accurately calculated. N.C. Gen. Stat. § 97-30.
6. As a result of Plaintiff's compensable injury by accident, Plaintiff is entitled to have Defendant provide all related medical treatment reasonably required to effect a cure, provide relief or lessen the period of disability. N.C. Gen. Stat. § 97-25. This includes, but is not limited to, the treatment Plaintiff has already received at WakeMed, Duke Raleigh Hospital, and Orthopaedic Specialists of North Carolina.
7. Any employer required to secure the payment of compensation who refuses or neglects to secure compensation shall be punished by a penalty of one dollar ($1.00) for each employee, but not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00) for each day of such refusal or neglect, and until the same ceases. N.C. Gen. Stat. § 97-94(b). *Page 6 
8. Any person who, with the ability and authority to bring an employer in compliance with N.C. Gen. Stat. § 97-93, willfully fails to bring the employer in compliance, shall be guilty of a Class H felony. Any person who, with the ability and authority to bring an employer in compliance with N.C. Gen. Stat. § 97-93, neglects to bring the employer in compliance, shall be guilty of a Class 1 misdemeanor. Any person who violates this subsection may be assessed a civil penalty by the Commission in an amount up to one hundred percent (100%) of the amount of any compensation due the employers' employees injured during the time the employer failed to comply with N.C. Gen. Stat. §§ 97-93, 97-94(d). As Owner of Defendant, Israel Ojimadu had the ability and authority to bring Defendant into compliance, but neglected to secure the payment of compensation for Defendant.
9. "`[T]he Commission has the inherent power and authority, in its discretion, to consider defendant's motion for relief due to excusable neglect.' Allen v. Food Lion, Inc.,117 N.C.App. 289, 291, 450 S.E.2d 571, 572 (1994) (citingHogan v. Cone Mills Corp.,315 N.C. 127, 337 S.E.2d 477 (1985)); see generally N.C. Gen. Stat. § 1A-1, Rule 60(b)(1) (2001). `Whether excusable neglect has been shown is a question of law, not a question of fact.' Equipment, Inc. v. Lipscomb,15 N.C.App. 120, 122, 189 S.E.2d 498, 499 (1972). `[W]hat constitutes excusable neglect depends upon what, under all the surrounding circumstances, may be reasonably expected of a party in paying proper attention to his case.' Thomas M.McInnis Assoc., Inc. v. Hall,318 N.C. 421, 425, 349 S.E.2d 552, 555 (1986). `Deliberate or willful conduct cannot constitute excusable neglect, . . . nor does inadvertent conduct that does not demonstrate diligence[.]'Couch v. Private Diagnostic Clinic,133 N.C.App. 93, 103, 515 S.E.2d 30, 38 (internal citation omitted),aff'd, 351 N.C. 92, 520 S.E.2d 785 (1999)." Egen v. ExcaliburResort Professional,191 N.C. App. 724, 730-31, 663 S.E.2d 914, 919 (2008). *Page 7 
10. The Full Commission concludes as a matter of law that there is no evidence in the record of excusable neglect for Defendant's failure to attend the hearing before the Deputy Commissioner. First, Defendant's assertion that it did not appear at the hearing because its attorney did not advise that the Motion to Continue was denied is not supported by any evidence, affidavit, or other documentation. Second, failure to follow up with one's attorney about whether a hearing was successfully continued does not reflect diligence or proper attention to the case. Defendant's Motions to Set Aside the Opinion and Award and for a New Hearing must be denied.
11. Plaintiff's Motion to Dismiss Defendant's Appeal for failure to attend the hearing before the Deputy Commissioner should be denied.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to Plaintiff temporary total disability compensation. Said disability compensation shall be at Plaintiff's compensation rate of $280.00 from December 13, 2008 until June 6, 2009, a period of 25 weeks, for a total of $7,000.00. This accrued compensation shall be paid in a lump sum.
2. Defendant shall pay to Plaintiff temporary partial disability compensation of two-thirds of the difference between Plaintiff's average weekly wage of $420.00 and Plaintiff's earnings in his employment with Western Express, from June 6, 2009 to the present and continuing, subject to the 300-week statutory limitation, or until Plaintiff regains his pre-injury *Page 8 
earning capacity. Plaintiff shall provide to the Full Commission documentation of his wages at Western Express so that Plaintiff's temporary partial disability compensation may be calculated.
3. Defendant shall pay and provide to Plaintiff all medical treatment related to the compensable injury of December 13, 2008, that tends to effect a cure, provide relief, or lessen his period of disability. This includes, but is not limited to, the recommended MRI and treatment with a neurologist. Defendant shall also pay Plaintiff's unpaid medical bills in the amount of $15,897.69.
4. A reasonable attorney's fee of twenty-five percent of the compensation due Plaintiff under paragraphs 1 and 2 of this Award is approved for Plaintiff's counsel and shall be paid as follows: Twenty-Five percent of the accrued lump sum due Plaintiff shall be deducted and paid directly to Plaintiff's counsel. Thereafter, Plaintiff's attorney shall receive every fourth compensation check for temporary partial disability compensation due Plaintiff.
5. Defendant is ordered to pay the State of North Carolina penalties in the sum of $13,050.00 for 261 days Defendant failed to secure workers' compensation insurance coverage in accordance with the Workers' Compensation Act.
6. An additional penalty of 100% of any amount of compensation due and owing to Plaintiff in this matter, is assessed against Israel Ojimadu individually for failing to comply with N.C. Gen. Stat. § 97-93. A check in the amount of $22,897.69, which reflects the temporary total disability compensation and unpaid medical expenses, shall be made payable to the North Carolina Industrial Commission and sent directly to Assistant Attorney General Tracy Curtner at the Fraud Unit of the North Carolina Industrial Commission
7. Defendant shall bear the costs of this action.
This the ___ day of March 2010. *Page 9 
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/_____________ DANNY L. McDONALD COMMISSIONER
 S/_____________ STACI T. MEYER COMMISSIONER *Page 1